[L. A. No. 5907. In Bank.—July 30, 1919.]

In the Matter of the Estate of EUGENIE A. DUFFILL, Deceased.

[L. A. No. 5886. In Bank.—July 30, 1919.]

In the Matter of the Estate of EUGENIE A. DUFFILL, Deceased. ALBERT DUFFILL, a Minor, etc., et al., Appellants; HARRY DUFFILL, Respondent.

[1] WILLS—TIME OF TAKING EFFECT.—Wills generally speak as of the date of the death of their makers.

[2] ID.—PROVISION IN RESTRAINT OF MARRIAGE — MARRIAGE BEFORE DEATH OF TESTATRIX—VOID PROVISION.—A provision in a will that in case the son of the testatrix marries a certain woman, the trustee named in the will shall pay to him thereafter annually a less sum than the amount thereinbefore named, operated only upon the trustee, and where the son married such woman before the death of the testatrix, the contingency upon which such inhibition was to become effective was removed.

[3] CORPORATIONS — SOURCE OF DIVIDENDS — DETERMINATION OF DIRECTORS, WHEN NOT CONCLUSIVE UPON COURTS.—The determination

of the directors of a corporation as to the source of its dividends has no binding or even persuasive effect upon the court when it is required to decide whether a stock dividend constitutes income which goes to the tenant for life or for years or is principal to be held for the benefit of the remaindermen.

[4] ID.—GIVING OF DIVIDEND—REDUCTION OF CORPUS OF ESTATE—QUESTION FOR DETERMINATION.—In such a case the court will ascertain whether the giving of the stock dividend or the money dividend to the life tenant reduces the value of the *corpus* of the estate as it existed at the time of the death of the testatrix.

[5] ID.—TRUST IN STOCK—PAYMENT OF DIVIDENDS OUT OF EARNINGS AFTER DEATH OF TRUSTOR—SUFFICIENCY OF EVIDENCE.—That stock dividends declared payable out of surplus accumulated prior to death of testatrix were actually paid out of earnings of a corporation after the death of a testatrix, who created a trust in the stock owned by her, is demonstrated by the fact that after the payment of dividends declared after death of testatrix, the corporation had on hand surplus and undivided profits in excess of the amount held at her death.

[6] ID.—LIFE TENANCY IN CORPORATION STOCK — APPORTIONMENT OF DIVIDENDS.—If the fund out of which the dividend is paid accrued before the life estate arose, it is principal belonging to the *corpus* of the estate, but if the fund was earned after the life estate arose, it is income belonging to the life tenant.

[7] ESTATES OF DECEASED PERSONS — TRUST UNDER WILL — ACCUMULATION OF INCOME BEYOND MINORITY—VOID PROVISION—GIFT OF INCOME VALID.—Direction in a trust created under a will for accumulations of income from the trust estate beyond the age of minority of the beneficiary is void under section 723 of the Civil Code, but the gift of the income is valid under section 733 of such code.

APPEAL from a decree of distribution of the Superior Court of Los Angeles County. James C. Rives, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. E. Bacon, W. E. Mitchell, Gibson, Dunn & Crutcher and Hunsaker, Britt & Edwards for Appellant in L. A. No. 5907.

Kemp, Mitchell & Silberberg for Respondents in L. A. No. 5907.

Kemp, Mitchell & Silberberg for Appellants in L. A. No. 5886.

E. E. Bacon, W. E. Mitchell, Samuel Poorman, Jr., Gibson, Dunn & Crutcher, Hunsaker, Britt & Edwards for Respondent in L. A. No. 5886.

MELVIN, J.—Certain parties to a proceeding on objections by the heir at law to the distribution of the estate under the will of Eugenie A. Duffill have appealed from the decree of distribution. These are Albert Duffill, a minor, by his guardian, Los Angeles Trust & Savings Bank, a corporation, Martha Duffill, and Los Angeles Trust & Savings Bank, a corporation, executor and trustee named in the will.

While the appeal is general; appellants attack (1) that part of the decree holding invalid the provision in the will reducing the devise to Harry Duffill (son of the testatrix), and making smaller his annuity in the event of his marriage to Mrs. Alice McNamara, and (2) that portion of the judgment by which one-half of certain stock dividends received by the executor during administration and paid, as appellants allege, from the earnings of the Grasselli Chemical Company which accrued prior to the death of Eugenie A. Duffill, should go to Harry Duffill at once as income from a trust created by the will, the contention of appellants being that these dividends should become part of the *corpus* of the trust for subsequent distribution under the terms thereof.

The will was dated September 10, 1914. Mrs. Duffill, the testatrix, died January 7, 1916. At the time of the execution of the will Harry Duffill was living with his mother. Martha Duffill, Harry's wife, and their son Albert were living elsewhere. A suit for divorce in which she was plaintiff and in which Mrs. Alice McNamara was named as co-respondent was pending. This was later tried, an interlocutory decree being entered December 14, 1914. A final decree was given on the sixteenth day of December, 1915, and on the following day Mrs. McNamara and Harry Duffill were married. The latter immediately apprised his mother of the marriage.

The principal asset of the estate was 4,467 shares of stock of the Grasselli Chemical Company, of the par value of $446,-700, which had paid excellent dividends. Its value had been augmented shortly before the death of the testatrix by the payment of a stock dividend of ten per cent, which was received by the executor after her death, and thereafter other dividends both in cash and stock were declared and paid.

The executor in due time after probate filed its final account and petition for distribution, which was resisted by Harry Duffill. There was a hearing upon this matter and thereafter, but before decision, there was a stipulation, to which we shall later refer more in detail, establishing certain facts surrounding the issuance of stock dividends by the Grasselli Chemical Company and in July, 1918, the court signed the order and decree from which the appeal of proponents is prosecuted.

The principal beneficiaries under the will were Harry Duffill, the son, and Albert Duffill, the grandson, of the testatrix in whose favor certain trusts were created. That which was created for the benefit of Harry Duffill provided for the payment by the trustee, Los Angeles Trust and Savings Bank, to him annually of the sum of four thousand dollars during the minority of his son Albert. This trust provision contained the following language: "Provided, that if my son Harry Duffill shall marry one Mrs. Alice McNamara, then and in that event, I desire that the said trustee shall pay to him thereafter only the sum of two thousand dollars ($2,000) per year instead of four thousand dollars ($4,000) per year."

The will also contained a provision for the final distribution of Harry Duffill's estate in the following language:

"When my grandson Albert Duffill shall attain the age of twenty-one years, said trustee shall segregate said trust fund and any accumulations thereof, into two equal parts and transfer and convey one of said parts to my son Harry Duffill, provided, however, that in the event my said son Harry Duffill shall have married Mrs. Alice McNamara prior to the date when said Albert Duffill shall have attained the age of twenty-one years, then and in that event the said trustee shall at said time distribute to my son Harry Duffill one-half of the balance of the estate in the hands of said trustee after withdrawing therefrom all of the stock of the Grasselli Chemical Company."

The trial court found that at the time of his marriage to Mrs. McNamara, in the lifetime of his mother, Harry Duffill "had neither knowledge nor notice of those provisions of said will in restraint of such marriage, nor had he knowledge or notice thereof until after the testatrix' decease." Harry Duffill, the heir at law, and all other persons interested in the estate, except Albert, were adults at the date of the death of Mrs. Eugenie A. Duffill. The court held that all of the

provisions of the will for the accumulation of income for the benefit of any person other than the minor grandson were void and that the conditions for the prevention of the marriage of Harry Duffill were also void. Distribution on this theory was decreed.

Counsel for appellants have learnedly discussed the rules of the civil law and of the ecclesiastical law derived therefrom. It is asserted by them that section 710 of the Civil Code is merely a codification of the ecclesiastical law and the temporal law regarding restraints upon marriage, and that while the ancient and the modern rule prohibited or disregarded general restraints upon entry into the marriage state, any particular inhibition against marriage to a named individual has always been upheld. Under the circumstances presented by this appeal it is not necessary for us to decide whether section 710 of the Civil Code is a codification of English probate law or not, because even assuming, for the sake of argument, that this part of the will would be effective if a marriage between Mrs. McNamara and Harry Duffill had been contracted *after* the death of the testatrix, their marriage *before* Mrs. Duffill's death removed the very contingency upon which the inhibition in the will was to become effective. [1] Wills generally speak as of the date of the death of their makers. Section 749 of the Civil Code provides that: ''The delivery of the grant, where a limitation, condition, or future interest is created by grant, and the death of the testator, where it is created by will, is to be deemed the time of the creation of the limitation, condition, or interest.'' There is nothing in the will by which Harry Duffill is to receive a diminished share of the property in the event of his marriage before his mother's death. When she executed the testament he was a married man and could not have been legally married to Mrs. McNamara. He was being sued for divorce. The mother perhaps, indeed probably, believed that in the event of the granting of the divorce during her lifetime she could influence her son against marrying Mrs. McNamara. The will (either for that or some other reason) contemplated the possibility of the marriage after Mrs. Duffill's death. The words of restraint operate not upon Harry, but upon the trustee. The income is not to be automatically decreased upon his marriage, but the trustee shall ''thereafter'' pay to him only two thousand dollars annually. The direction as to the *corpus* is

that the trustee shall distribute Harry Duffill's share when Albert shall have attained the age of twenty-one years, withholding all of the stock in the Grasselli Company, if he shall have married Alice McNamara. All of these things were to be done by the trustee—the conveyancer made so by the will only after the death of the testatrix.

A very similar case to the one at bar is *Brown* v. *Severson,* 59 Tenn. (12 Heisk.) 381. The will considered in the opinion in that case directed that the executor and executrix should hold and administer certain property for the "support, education, and inheritance" of the testator's children. The fund (being all of the property, real and personal, not otherwise disposed of specifically by the will) was to be "legally and equitably estimated" whenever any child should marry or attain lawful age, so that such child should then have an equal share of said estimated fund or property. It was provided, however, "that no child shall ever marry any blood kin, or blood relation, or any Catholic, or adherent of the Roman Catholic Church, or of its Papal Head; nor before her eighteenth year shall be full; and should any of my said children marry in any way contrary to any part of this provision, then that child shall take or receive, in lieu of what is or has been herein bequeathed to her, one thousand dollars in money, to be disbursed and used by my said executor and executrix in the careful purchase of such things as said child may need in and towards housekeeping, and to be given to said child on loan or in trust, and to constitute the whole of that child's legacy." One of the daughters, during her father's lifetime and before she was eighteen years of age, had married with her father's knowledge. The court held *inter alia* that the provision or condition in the will was intended to apply only to those marriages occurring after his death. After citing the part of the will quoted above the court said: "It is evident from this that the testator contemplated a forfeiture taking place when his executor and executrix should have charge of his estate, which could only be after his death." These words are very pertinent to the provisions of the will here under discussion. The court also supported the conclusion reached by section 2195 of the Tennessee code which provides that a will is to speak and take effect as if it had been executed immediately before the testator's death. **[2]** We decide, therefore, that the

court did not err in holding that the provision of the will in restraint of marriage was void.

We shall now discuss the stock dividends declared and paid after Mrs. Duffill's death. The question, according to the trustee and its associated appellants, is this: Do such dividends constitute parts of the *corpus* of the residuary estate or are they to be regarded as part of the income thereof? Respondent Harry Duffill insists that the stock dividends were actually paid from earnings of the Grasselli Chemical Company which had been accumulated after the death of the testatrix. We shall examine this contention before determining the rule of distribution applicable to the dividends. The facts as stipulated are as follows:

On November 23, 1916, the directors of the Grasselli Chemical Company resolved that there be distributed to the common stockholders of record December 15, 1916, "out of the surplus accumulated prior to March 1, 1913" a ten per cent common stock dividend, payable January 2, 1917. On August 23, 1917, a similar resolution was passed making a stock dividend of three and one-half per cent, payable out of the same surplus, the "same to be distributed on September 29, 1917." On November 22, 1917, the said directors resolved that there be distributed to the common stockholders of record December 15, 1917, out of the earnings of the year 1917, a 4.15 per cent dividend, the same to be distributed December 31, 1917. It was further stipulated that the Grasselli Chemical Company had surplus and undivided profits of the value shown on its books in the following amounts upon the dates specified:

"January 1, 1913 ................. $8,116,175.84.
January 1, 1914 ................. $4,665,254.08.
January 1, 1915 ................. $5,335,384.88.
January 1, 1916 ................. $7,213,304.56.
January 1, 1917 ................. $9,796.906.40.
January 1, 1918 ................. $10,166,737.81."

Under the first resolution the executor received a stock dividend of 491.4 shares of the common stock, and 174 25/200 shares under the second.

While it is true that the first and second resolutions declare the dividends payable out of the surplus accumulated prior to March 1, 1913, that declaration was not binding upon the probate court. [3] Except in a few of the states the deter-

mination of the directors of a corporation as to the source of
its dividends has no binding or even persuasive effect upon
the court when it is required to decide whether a stock
dividend constitutes income which goes to the tenant for life
or for years or is principal to be held for the benefit of the
remainderman.   As was said in *McLouth* v. *Hunt*, 154 N. Y.
179–198, [39 L. R. A. 230, 48 N. E. 548, 553] : "The mere
adoption by the corporation of a resolution cannot change
accumulated earnings into capital, as between the life ten-
ant and remainderman.

"When questions arise under a will between parties stand-
ing in such relations to each other, with respect to the right
to accumulated earnings upon capital stock, the courts must
determine the questions for themselves, according to the na-
ture and substance of the thing which the corporation has
assumed to transfer from the one to the other, and they are
not concluded by mere names or forms.   For all corporate
purposes the corporation may doubtless convert earnings into
capital, when such power is conferred by its charter, but when
a question arises between life tenants and remaindermen con-
cerning the ownership of the earnings thus converted the
action of the corporation will not conclude the courts."   And
in the opinion in the case of *Pritchitt* v. *Nashville Trust Co.*,
96 Tenn. 472–477, [33 L. R. A. 856, 36 S. W. 1064, 1065],
the court said: "The right to the use of the property entitles
the life tenant to its net income.   As applied to land, it en-
titles him to the crops or rent; as applied to money or bonds,
it entitles him to the interest; and as applied to corporate
stock, it should, upon the same reasoning, entitle him to the
net earnings.   If the life tenant may not be deprived of crops
or rents to make the land better, or of interest to enlarge
the *corpus* of money or bonds, why should he be deprived of
net earnings of corporate stock, covered by stock dividends,
to augment the remainder estate?   It does not seem to us a
sufficient answer to say that the corporation, in the latter
case, has seen fit, in the due exercise of its power, to capital-
ize such earnings, rather than pay them out in cash dividends.
What has the capitalization of the earnings to do with their
ownership as between life tenant and remainderman, or how
can the change of form affect the title of those persons?
Can the corporation, after earnings have been made and as-
certained, give them to one person by this procedure or to

another by that procedure? Certainly not. . . . The life tenant of corporate stock is entitled to the undiminished benefit of its net earnings in any and every contingency; less than that would not allow him the full use of the life estate." In *Hite's Devisees* v. *Hite's Exr.*, 93 Ky. 257–266, [40 Am. St. Rep. 189, 19 L. R. A. 173, 20 S. W. 778, 780], the court said: "Where a dividend, although declared in stock, is based upon the earnings of the company, it is in reality, whether called by one name or another, the income of the capital invested in it. It is but a mode of distributing the profit. If it be not income, what is it? If it is, then it is rightfully and equitably the property of the life tenant. If it be really profit, then he should have it, whether paid in stock or money." This doctrine is further expounded and the authorities supporting it are cited in 2 Cook on Corporations, seventh edition, section 554, and in Thompson on Corporations, second edition, section 5410.

[4] In such a case as this the court will ascertain whether the giving of the stock dividend or the money dividend to the life tenant reduces the value of the *corpus* of the estate as it existed at the time of the death of the testator —or in this case of Mrs. Duffill, the testatrix. The intrinsic value as shown by the books of the corporation (and in this case by the stipulation) is to be taken into consideration. This establishes that which the remainderman is entitled to have preserved for ultimate distribution to him (*Smith's Appeal,* 140 Pa. St. 344, [23 Am. St. Rep. 237, 21 Atl. 438]). As is well said by learned. counsel for Harry Duffill: "When a share of stock in a corporation is issued it represents a *pro rata* interest in all the property of the corporation, and a board of directors has no power to declare any particular share, or class of shares, to be representative of any particular part of the corporate assets, in the absence of clear legislative authority for such a declaration.

"When a board of directors declares a stock dividend out of surplus earnings, they mean only that they increase the outstanding stock of the corporation to correspond with an equal amount of the increase of the corporate assets; the stock when issued is not limited for its value to such increased amount of assets, but derives its value from the entire assets of the concern. No form of words declaring the dividend can alter this fact.

"The shares received as stock dividends by the estate of Mrs. Duffill since her death, represent profits accruing to such estate because of its interest, as a holder of stock owned by her at the time of her death, in the aggregate of all the assets of the Grasselli Corporation, and not of any particular part of those assets; and such stock dividends are income of her estate, if their issuance does not reduce the value of the shares owned by her at the time of her death."

[5] That they do not reduce the value of said shares is clear. Mrs. Duffill died January 7, 1916. The surplus and undivided profits of the corporation at that time, as will be seen by reference to the figures quoted above from the stipulation of the parties, were more than seven million dollars. After her death two stock dividends were declared of ten and three and one-half per cent, respectively, directed to be paid out of the surplus accumulated prior to March 1, 1913. A later stock dividend of 4.15 was payable, according to declaration of the directors, out of the earnings of the year 1917. The total amount of these dividends was less than nineteen per cent. Deducting all the cash and cash dividends declared after Mrs. Duffill's death, the company had on January 1, 1918, surplus and undivided profits amounting to more than ten million dollars—an increase of more than forty per cent in surplus and undivided profits against an augmentation of the outstanding capital stock of less than nineteen per cent. This demonstrates that the stock dividends were actually paid out of the earnings of the corporation, after Mrs. Duffill's death.

In the brief of the appealing executor and its associates the two methods of apportioning dividends which are in use in America are discussed. These are called by Cook, in his work on Corporations, seventh edition, section 553 et seq., "The American or Pennsylvania rule" and "The Massachusetts rule." According to the American rule, if it be found that the fund out of which the dividend is paid accrued before the life estate arose, it is held to be principal belonging to the *corpus* of the estate. But when it is found that such fund was earned *after* the life estate arose, then it is income belonging to the life tenant. Of the other rule, known sometimes as "the rule in Minot's Case," which prevails in Massachusetts, Georgia, Rhode Island, and Illinois, the learned author says: "It regards cash dividends, whether large or

small, as income, and stock dividends, whenever earned and however declared, as capital, and the rule, accordingly, is a simple one. Cash dividends belong to the tenant for life and stock dividends to the *corpus*. There is little doubt, however, that this rule works great hardship and injustice in many cases. Hence the rule is not rigidly adhered to, but the court, in deciding whether the distribution is a stock or a cash dividend, may consider the actual and substantial character of the transaction, and not its nominal character merely.'' **[6]** That we adopt the American or Pennsylvania rule is evident from the foregoing discussion and the cases cited. *In re Osborne,* 209 N. Y. 450–477, [Ann. Cas. 1915A, 298, 50 L. R. A. (N. S.) 510, 103 N. E. 723, 823], is an excellent example of the application of the rule which there was stated as follows: ''1. Ordinary dividends, regardless of the time when the surplus out of which they are payable was accumulated, should be paid to the life beneficiary of the trust. 2. Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund.'' Tested by this rule the decision of the probate court distributing one-half of the stock dividends to Harry Duffill must stand.

That part of the judgment from which the executor and trustee and its associates appeal, therefore, should be affirmed.

We will now consider the appeal of Harry Duffill from certain parts of the decree, and hereinafter in this opinion we shall refer to him as ''the appellant.'' His appeal is from so much of the decree of distribution as upholds any part of the trust scheme set forth in the will of his mother. Appellant's counsel contend that the two trust schemes, one chiefly for the supposed benefit of himself and the other to provide an income for his son Albert, and to distribute half the accumulated fortune to the latter after his minority, are so intimately interwoven in one testamentary scheme that the destruction of one trust involves the other. The appel-

lant, therefore, asks the court to decide that his mother died intestate and that he, as heir at law, is the sole inheritor of her estate. In this behalf a number of cases are cited, including *Estate of Fair*, 132 Cal. 523–540, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], *Carpenter* v. *Cook*, 132 Cal. 621–625, [84 Am. St. Rep. 118, 64 Pac. 997], *Hofsas* v. *Cummings*, 141 Cal. 525, [75 Pac. 110], *Estate of Dixon*, 143 Cal. 511, [77 Pac. 412], and *Estate of Whitney*, 176 Cal. 12, [167 Pac. 399]. Without analysis of these authorities in detail it is enough to say that each is dependent for the conclusion reached by the court upon the peculiar facts appearing from the record. In the case now before us the two trust provisions are easily sustainable and the will may be upheld as a substantial declaration of the testamentary intent after eliminating the unlawful conditions.

We have in this opinion discussed the terms of the trust relating to Harry Duffill. But it will be necessary again to examine the fifth clause of the will in order to have in mind the substantial parts of the trust in favor of the grandson of testatrix. The trustee is by the will ordered to invest and reinvest the property "and to apply and distribute the income and principal" as thereinafter directed. The trustee also is to pay three thousand dollars a year to Albert, during minority; to pay appellant four thousand dollars a year during his son's minority (said annuity to be reduced in case of the prohibited marriage taking place), and then follows this language: "When my grandson Albert Duffill shall attain the age of twenty-one years, said trustee shall segregate said trust fund, and any accumulations thereof, into two equal parts and transfer and convey one of said parts to my son Harry Duffill." This is followed by the void condition regarding marriage. After Albert's majority, the portion distributable to his father having been first subtracted from the *corpus* of the trust estate, the distribution is to be as follows: "Said trustee shall pay to said Albert Duffill the entire income from said portion of said trust estate so distributable to said grandson Albert Duffill, and shall distribute to the said Albert Duffill said portion of said trust estate so distributable to him under the terms hereof in such portions, and at such times as it, in its discretion, deems for the best interests of my said grandson Albert Duffill, after said Albert Duffill shall have reached said age of twenty-one

years with the limitation that said entire portion shall have been ·distributed by said trustee to ·my said grandson on or before the time when said grandson shall have attained the age of twenty-five years.'' The decree of distribution provides as follows: ''That the provisions of said Paragraph Fifthly in restraint of the marriage of the said Harry Duffill with said Mrs. Alice McNamara are, and each of them is, null and void, and also that each and every the directions, trusts and provisions of said Paragraph Fifthly for the accumulation of the income of testatrix' residuary estate, except in so far as such accumulation is directed to be made for the benefit of said minor, Albert Duffill, and only during ·his minority, are altogether in contravention of the statutes of the state of California in such case made and provided, and are void; that the ·devise and ·bequest of all the rest, residue and remainder of the estate of the decedent to the Los Angeles Trust & Savings Bank, in trust, as provided in said Paragraph Fifthly of said will, constitutes a valid trust, and should be enforced according to the provisions of said will, except in the particulars wherein said provisions have hereinbefore been found and declared to be illegal and void.'' The other portions of the decree relate to the carrying out of the details of this general order of distribution:

It is conceded ₍that the implied directions for the accumulation of the income except in the trust estate of the minor are void. But only such directions are made void by the statute (Civ. Code, sec. 723; *Estate of Pforr,* 144 Cal. 121, [77 Pac. 825]). **[7]** But the gift of the income does not fall with the invalid direction for accumulation. Section 733 of the Civil Code is as follows: ''When, in consequence of a valid limitation of a future interest, there is a suspension of the power of alienation ·or of the ownership during the continuation of which the income is undisposed of, and no valid direction for its accumulation is given, such income belongs to the persons presumptively entitled to the next eventual interest.'' The courts of New York under a similar statute have consistently ·held that the void trust for ac-·cumulation of income does not invalidate the gift of the principal. (*Kilpatrick* v. *Johnson,* 15 N. Y. 322; *Pruyn* v. *Sears,* 96 Misc. Rep. 200, [161 N. Y. Supp. 58]; *Cochrane* v. *Schell,* 140 N. Y. 516, [35 N. E. 971]; *Manice* v. *Manice,*

43 N. Y. 303–376; *Matter of Ossman* v. *Von Roemer,* 221
N. Y. 381, [117 N. E. 576]; *Cook* v. *Lowry,* 95 N. Y. 103.)

The testatrix intended that appellant should receive one-
half of the income, but upon the void condition that it should
be accumulated during Albert's minority. He receives it
under the decree freed of the void condition against accumu-
lation. Being the person entitled to the next eventual inter-
est, he is entitled to it, and the trust itself is not destroyed
in other respects. The decree avoids the *direction* for ac-
cumulation only and distributes to the intended object of
the bounty of testatrix. So, with the void condition against
marriage. The result of eliminating it is the same as if it
were valid, but had never been violated. The decree does
in our opinion substantially carry out the wishes of the tes-
tatrix in so far as they were not in contravention of law.
The fact that the carrying out of the wishes of Mrs. Duffill
in the matter of the prohibition of her son's marriage would
have changed the distribution of a large part of the prop-
erty is immaterial. The law strikes out the immaterial pro-
vision with reference to marriage, but the gift stands. So,
with the accumulations. Undoubtedly the testatrix intended
the income to be retained and to go with the *corpus* of the
trust estate in final distribution. Her intent was by the
decree only frustrated as to the time when her son Harry
should receive his part of the income and this result was
reached because of her unlawful wish for accumulation of
that portion.

As was said by Mr. Justice Henshaw in the opinion in
*Estate of Yates,* 170 Cal. 254–256, [149 Pac. 555, 556], in
speaking of legacies given in trust for accumulations of prin-
cipal and interest until the beneficiary should reach the age
of twenty-five years: "The direction in these trusts for ac-
cumulations beyond the age of the minority of the legatees
is unquestionably void. (Civ. Code, secs. 723, 724.) But
this fact does not in law operate to destroy the trust in its
creation, but merely to avoid the provision for the illegal
accumulations (Civ. Code, sec. 725), with the result that the
legatees after maturity would be entitled to receive the in-
comes of the trust funds." We cannot agree with appellant
in his contention that the whole testamentary scheme failed
and that the decree of the superior court sitting in probate
amounted to the fabrication of a new will.

No other subjects discussed in the briefs require further analysis or comment.

That part of the judgment attacked in the appeal of Harry Duffill (L. A. No. 5907) is affirmed.

That part of the judgment from which the executor and trustee and its associates appeal is affirmed.

Shaw, J., Olney, J., Lawlor, J., Wilbur, J., Lennon, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.