[S. F. No. 9240.  In Bank.—March 28, 1921.]

In the Matter of the Estate of ABRAHAM GARTENLAUB, Deceased.  ALICE G. B. GARTENLAUB, Appellant, v. UNION TRUST COMPANY OF SAN FRANCISCO (a Corporation), as Trustee, etc., et al., Respondents.

[1] TESTAMENTARY TRUST — DIVIDENDS FROM PROCEEDS OF CORPORATE SALES OF LAND—RIGHTS OF LIFE BENEFICIARY.—Under the provision of a testamentary trust directing payment to the widow of the testator monthly for the remainder of her life of three-fourths "of the entire net income, revenue and profit of every kind arising from said estate in said month in any way whatever," she is entitled to dividends on corporation stock in the hands of the trustee declared wholly from moneys derived from sales of a part of a tract of land belonging to the corporation made after the decree of distribution, where the corporation, although it was authorized to do a general investment and trading business, was maintained and conducted for the sole purpose of selling one tract of land in parcels at a profit and dividing the proceeds among its stockholders.

[2] ID.—RIGHTS OF REMAINDERMAN—VALUE OF STOCK AS OF DATE OF ACQUISITION BY TRUSTEE.—Under such a trust, the value of the corporate stock as of the date it came into the trust estate must be conserved for the remainderman.

[3] ID.—CORPORATE STOCK AS PART OF TRUST ESTATE — INCOME FOR LIFE BENEFICIARY WITH REMAINDER — RIGHTS OF REMAINDERMAN— SUBSEQUENT ACCUMULATIONS.—Where corporate stock forms a part of a trust estate the income of which is to be paid to one for life with remainder to another, the remainderman is entitled to the value of the stock as of the date of the creation of the trust, that is, the testator's death, and any accumulations beyond that date are distributable as profits.

APPEAL from an order of the Superior Court of the City and County of San Francisco settling account of testamentary trustee and apportioning funds.  J. V. Coffey, Judge.  Reversed.

The facts are stated in the opinion of the court.

3.  Rights as between life tenant and remainderman in dividends or distributions by corporations, notes, 12 Ann. Cas. 650; Ann. Cas. 1912B, 1218; Ann. Cas. 1915A, 311; Ann. Cas. 1918E, 629; 12 L. R. A. (N. S.) 768; 35 L. R. A. (N. S.) 563; 50 L. R. A. (N. S.) 510; L. R. A. 1916D, 211.

Garret W. McEnerney for Appellant.

Norman A. Eisner, Heller, Powers & Ehrman and Samuel S. Stevens for Respondents.

SLOANE, J.—This is an appeal by a beneficiary of a life interest under a testamentary trust from an order of the superior court settling the second annual account of the trustee and apportioning certain funds in the hands of the trustee between the interests created by the trust.

The entire residue of the estate of the testator, appraised at over four hundred thousand dollars, and consisting of real and personal property, stocks, bonds, and securities of various kinds, was distributed to the trustee under the terms of the will. It was directed that the entire trust property be sold and converted into certain interest-bearing securities. It was also directed that the trustee pay to the widow of said decedent, the appellant here, monthly for the remainder of her life, three-fourths *"of the entire net income, revenue and profit of every kind arising from said estate in said month in any way whatever"* and the remaining one-fourth to a sister of decedent.

Part of the property of this trust which came into the hands of the trustee under the decree of distribution consisted of five hundred shares of the capital stock of the F. & K. Land Company, a California corporation. After the decree of distribution certain dividends were declared on this stock, and the estate's proportion thereof, aggregating four thousand five hundred dollars, was paid to the trustee. These dividends were declared wholly from moneys derived from sales of a part of a tract of land belonging to the corporation, which sales were made after the decree of distribution. How these dividends should be apportioned between the life beneficiary and the remainder interests is the question in dispute.

While the purposes embraced in the articles of incorporation of this company authorize a general investment business, the only property it ever acquired was this tract of land, consisting of 1,920 acres in Kern County, California, purchased for $9,792, at the rate of $5.10 per acre, and the only business it ever engaged in was the placing of this land

upon the market and from time to time selling portions of it.

The land was prospective oil land and was clearly bought and held on a speculation. No attempt by the corporation was ever made to develop the property, or in any way derive a profit from it, other than by sale. Of this tract 450 acres were transferred to two of the seven stockholders for their two-sevenths of the corporate stock, which was then distributed between the remaining five stockholders. The property advanced rapidly in value, and prior to the death of the decedent six hundred acres of the remaining land had been sold for $232,750, one-fifth of which had been distributed to decedent in dividends.

At the time, therefore, of the distribution to the trustee of these five hundred shares, being one-fifth of the corporate stock, the assets of the corporation, upon which the value of the stock rested, consisted of the remaining 870 acres of this land. Although these five hundred shares of stock were only appraised at two thousand dollars in the inventory of the estate, it is apparent from the figures shown by these various sales that the shares had an immensely greater value than indicated by this appraisement.

In any event, it is fairly obvious that at the time of the death of the testator, June 1, 1914, the *corpus* of the estate passing to the trustees, as represented by these shares, was the stock with its fair value as based on the remaining assets of the corporation.

The sole question before us is as to the relation of the dividends from the subsequent sales thereafter to be declared by the corporation and paid to the trustee to "income, revenue and profit" upon this corporate stock. The trust under which these shares were distributed to the trustee directed that "as soon as may be" after the death of decedent, the trustee shall "sell and convert into money" said estate and property, except such portion thereof as already consisted of interest-bearing securities, and invest the proceeds in certain enumerated classes of bonds and mortgages.

Such sale has not been made as to this stock. The trustee doubtless considered the investment in its present form more advantageous to the estate as a whole than it would be to immediately convert the stock into cash and invest the proceeds in the class of securities prescribed under the trust.

Under such circumstances the duty of a court of equity dealing with the administration of this trust fund is to determine in the light of all the peculiar facts, and the respective interests of the life beneficiary and the remaindermen, what is a fair apportionment of the proceeds of these dividends resulting from land sales, and which represent almost in their entirety a clear gain of some sort on the original investment, whether considered as stock dividends or income profits.

We do not need to concern ourselves as to how the dividends accruing and paid in testator's lifetime were considered or applied by him. At his death he was the owner of five hundred shares, being one-fifth of the capital stock of the corporation. The value of the total stock was represented by the remaining 870 acres of land, the only asset of the corporation. These five hundred shares on the death of the testator, by the terms of his will, became part of the trust estate. Irrespective of what they originally cost or what dividends had previously been declared on them, they added to the capital fund of the estate just what they were worth at that date. Had the actual conversion into interest-bearing securities as directed by the will been made at that time, the securities so obtained would have become part of the residuary capital, and three-fourths of the interest therefrom would have been payable to the appellant as a life beneficiary.

As already indicated, this asset of the trust estate was not converted, but still remains in the hands of the trustee in its original form, and there has been received thereon in dividends from the corporation the four thousand five hundred dollars referred to. These dividends are part of the proceeds of two sales of land made by the corporation from the remaining acreage, one on December 12, 1916, of eighty acres at one thousand five hundred dollars per acre, and the other on March 19, 1917, of two hundred acres at one thousand five hundred dollars per acre. The dividends were from the cash payments on the sales and interest on deferred payments. The remaining payments are owing to the corporation in periodical interest-bearing installments.

Appellant contends that the entire dividend payments upon this stock above the original investment by the testator

should be treated as profits in the nature of income, and be paid to the life beneficiary.

Respondents insist that the money from which these dividends are declared is in no sense income or profits from the business in which the corporation is engaged, but the natural increment of the capital fund and should be added to the permanent fund of the trust.

The lower court held with respondents and only allowed for distribution to the life beneficiaries such portion of the dividends as were derived from interest on the deferred payments owing to the corporation from the land sales, aggregating $832.

No subject has been more prolific of controversy or productive of more divergent judicial opinion than that of the distribution of the revenues of trust property between the parties entitled to the income and the *corpus* of the estate. Able counsel on both sides of this controversy have been very diligent in collecting and presenting these authorities, and their number is such that it will not be practicable to attempt to review them in detail. The apparent conflicts in the decisions can be largely reconciled, however, by taking into account the great variety of circumstances out of which they arose.

In this case, it is stipulated between the parties that notwithstanding it possessed general powers to engage in land investments, "the corporation has never done any business from the time of its organization except to sell from time to time portions of the land originally conveyed to it as a consideration for its stock, and divide among its stockholders the proceeds of such sale. It has never had any assets except said land and the proceeds of sales of the same. It has never bought any additional land or dealt in any other commodity or done any other business, nor has the corporation at any time developed any of the land, worked the same or taken any products therefrom, or raised or produced any commodity thereon. It has never received any income, revenue or profit from any source whatever except the proceeds of sales of its lands." In other words, the sole purpose and business of this corporation has been to market this tract of land and to secure a profit to its stockholders by obtaining a price from it in advance of what it cost them. If the money obtained through this increase in value cannot be con-

sidered and divided as profits of the business in which the corporation is engaged, then there can be no profits for the stockholders. The distinction seems clear between this kind of corporate business, and one where the corporation acquires and owns land for the purpose of farming it, or leasing it or developing its mineral deposits, or selling timber from it. In such cases the stockholders are looking to the income thus produced for their profits, and any increase in the market value of the land itself is an increase in the value of the capital investment. Under the conditions first stated the dividends from the increased values would go to the life tenant, under the latter to the remainderman.

Respondents cite the case of *Miller* v. *Payne,* 150 Wis. 354, [136 N. W. 811], as being closely in point with the case before us. If we read that decision aright it recognizes the distinction just stated. In the course of the opinion it is said: "Any dividend derived from a mere enhancement of the value of assets representing capital from sources other than the accumulation of earnings, belongs to the remainderman and not to the life tenant. It represents *corpus,* not income." (Citing *Kalbach* v. *Clark,* 133 Iowa, 215, [12 Ann. Cas. 647, 12 L. R. A. (N. S.) 801, 110 N. W. 599]; *Holbrook* v. *Holbrook,* 74 N. H. 201, [12 L. R. A. (N. S.) 768, 66 Atl. 124]; *Hite* v. *Hite,* 93 Ky. 257, [40 Am. St. Rep. 189, 19 L. R. A. 173, 20 S. W. 778]; *Outcalt* v. *Appleby,* 36 N. J. Eq. 73; *Gray* v. *Darlington,* 15 Wall. 63, [21 L. Ed. 45, see, also, Rose's U. S. Notes]; *Eisner's Appeal,* 175 Pa. St. 143, [34 Atl. 577].) "To this rule there is a well-known exception in the case of a corporation engaged in buying and selling real estate at a profit; and if the St. Paul Avenue Improvement Company could be considered a trading corporation in real estate within the meaning of the exception to the rule stated, the profits accruing to the corporation, whether derived from an enhancement of value of real estate, or from rents and profits in excess of cost and maintenance, would be considered income and belong to the life tenant."

To bring the F. & K. Land Company of the instant case under this exception it, of course, must appear that it is "a corporation engaged in buying and selling real estate at a profit." This would seem to be sufficiently conceded by the terms of the stipulation hereinbefore quoted that it has

not done any business except to sell from this tract of land and divide the proceeds of the sales among its stockholders, and that it never has received any income, revenue, or profit from any source except the proceeds of these sales.

In other words, this corporation has been maintained and conducted for the sole purpose of managing and selling this land in parcels at a profit, and dividing the proceeds among its stockholders. The only purpose of its existence has been to realize a profit from the sale of these lands. Under its articles of incorporation it is authorized to do a general investment and trading business. It practically confined its activities to this one venture, which was clearly that of handling this tract of land as a commodity and selling it at an advanced price for the purpose of securing a profit for its stockholders.

We find a very striking analogy between this case and that of the appeal of Merchants Exchange Fund Association, referred to by both appellant and respondents here as the *Oliver Case* (136 Pa. St. 43, [20 Am. St. Rep. 894, 9 L. R. A. 421, 20 Atl. 527]). The closeness of the parallel appears from the syllabus given in the Atlantic Reporter as cited, which is as follows:

"Testator left his residuary estate to trustees to pay the net income therefrom to his daughter during her life, and, after her death, the principal to a charitable association. Part of the estate consisted of shares in a land company, held by testator. The company was unincorporated, but was organized by a contract entered into by its members, which provided that its business should be to buy and sell land, and should be carried on by trustees in their own names; that the interest of each member should be measured by his shares of stock, which he could sell and transfer without consulting with his associates, and without impairing the power of the trustees, or the existence of the company; that the stockholders should select the trustees to manage the business, and should be entitled to a distributive share in the profits. After testator's death, the trustees sold part of the land belonging to the company, and declared a dividend of the profits thereon. The increased price of the land was due to the discovery of copper on adjacent lands after testator's death. *Held*, that the dividend was per-

sonal estate representing income, and that having accrued after testator's death it went to his daughter.''

The court in its opinion says: ''The object in buying was not to mine or operate in any other manner, but to sell again so as to make gain by the purchase and sale of land, and the articles provided for the division of the profits made by such purchase and sale among the stockholders. The interest of each member was therefore an interest in the profits made. He had no title to the land bought by the trustees for the company, as a tenant in common or otherwise, and could neither convey nor incumber it. His interest in it was personal estate and the extent of that interest was shown by his certificates of stock. . . . The trustees under his will succeed him as holders of his shares, and their interest as such holders is neither greater nor less than his interest was while he was living. The company was not dissolved by Oliver's death and has not yet been dissolved. It has done but little business for several years but has paid the taxes on its lands and kept up its own organization, and still holds undisposed of nearly six hundred acres in the names of its trustees. . . . The dividend made by the company out of the proceeds of the forty acres [sold after the testator's death] has the same character, and is governed by the same rules as though it has been made in his lifetime. It represents part of the difference between the cost of the land sold, including taxes and expenses and the price received for it. That difference is the profit made by means of the purchase and sale of the land which it is the duty of the trustees to divide among the stockholders. It is clear, therefore, that this dividend is personal estate, and represents gain or profit made in the proper business of the land company, that of buying land for the purposes of sale, and selling it with a view to make gain for the stockholders. The will directs the payment of the net income from his estate, real and personal, to his daughter, and as this dividend represents income it goes to the daughter and not to the remainderman. The shares are part of the residuary estate and belong to appellant. The profit accruing from the sale of lands is income from the investment in the stock of the land company, and if made since the death of Oliver, is not to be distinguished from income derived from any other source.''

Respondents seek a distinction from the present case in the fact that in the Oliver case the company bought as well as sold the land. This distinction, if important, is more apparent than real in this instance. Here the land was purchased for the purpose of sale by the incorporators who organized the corporation with the object of its taking over the land and managing and marketing it; and, as in the Oliver case, "the object was not to mine, or operate in any other manner, but to sell again so as to make gain by the purchase and sale of the land."

We can see no force in the argument that the handling of this one tract of land was the only business the F. & K. Land Company ever engaged in, as affecting its status as a trading corporation. The activities of a mercantile corporation might be confined to handling a single stock of goods, but if its object was to sell the goods at retail and divide the profits among its stockholders, it would be dealing in these goods as a commodity, and its net receipts from such sales over and above the cost thereof would constitute profits of the business. (Taylor on Private Corporations, 5th ed., p. 786; Clark & Marshall on Private Corporations, 2d ed., p. 1621; 6 Fletcher's Ency. Law of Corporations, sec. 3721, and citations.)

[1] The life beneficiaries here are entitled to a liberal construction of the terms of this trust in their favor under the broad provision thereof that they are to receive the net income, revenues, and profit *of every kind* arising from said estate, *in any way whatever*.

[2] While we are satisfied that the gains from this investment through increase in its selling values are to be considered as income or profits, it is equally apparent that in the division of the proceeds of the residue of the lands which constituted the corporate assets at the inception of the trust the value of the stock as of the date it came into the trust estate must be conserved for the remaindermen. It is just as evident that the distribution as profit of all the dividends from sales of the remaining lands would destroy the value of the capital stock, as that the distribution of all such dividends to the capital stock would cut off all income.

[3] The doctrine generally adopted by the courts of America, and recognized by this court in *Estate of Duffill*, 180 Cal. 748, [183 Pac. 337], is that where corporate stock

forms a part of a trust estate the income of which is to be paid to one for life with remainder to another, what the remainderman is entitled to is the value of the stock as of the date of the creation of the trust, that is, the testator's death. Any accumulations beyond that date are distributable as profits. (*Estate of Duffill, supra; Appeal of Boyer,* 224 Pa. St. 144, [73 Atl. 320]; *Smith's Estate,* 140 Pa. St. 344, [23 Am. St. Rep. 237, 21 Atl. 438]; *Pritchett* v. *Nashville Trust Co.,* 96 Tenn. 472, [33 L. R. A. 856, 36 S. W. 1064]; *In re Osborne,* 209 N. Y. 450, 457, [Ann. Cas. 1915A, 298, 50 L. R. A. (N. S.) 510, 103 N. E. 723]; *In re Stokes' Estate,* 240 Pa. St. 277, [87 Atl. 971]; *In re Quay Estate,* 253 Pa. St. 80, [97 Atl. 1029]; *In re Shaeffer,* 178 App. Div. 117, [165 N. Y. Supp. 19, 22].)

In *Duffill Estate, supra,* the court says: "In such a case as this the court will ascertain whether the giving of the stock dividend or the money dividend to the life tenant reduces the value of the *corpus* of the estate as it existed at the time of the death of the testator. . . . The intrinsic value, as shown by the books of the corporation [and in this case by the stipulation] is to be taken into consideration. This establishes that which the remainderman is entitled to have preserved for ultimate distribution to him."

No evidence appears in the record in this case as to the value of this stock other than the statement that it was appraised at some stage of the probate proceedings at two thousand dollars, but in view of the fact that on June 11, 1914, at the time of testator's death, the corporation held undisposed of 870 acres of this land, and that in April, 1912, two years prior thereto, 280 acres of the land had been sold at $875 per acre, and that a year and a half after the testator's death eighty acres were sold at one thousand five hundred dollars per acre, and a few months later two hundred acres were sold at the same price per acre, equity will hardly permit such appraisement to stand as the basis of valuation in this settlement.

It is not for this court to fix such valuation, but by way of a tentative estimate it may conservatively be conjectured that at the time this stock passed into the trust estate the remaining lands of the corporation on a basis of the selling price shortly before and after had a market value somewhere between the sale prices of the earlier and later dates.

The value of this land furnishes the basis for arriving at an estimate of the value of the stock, as an asset of the trust.

In what way can this value, be it more or less than the speculative figures given, be conserved to the capital fund of the trust, and at the same time meet the requirements of the will that the entire net income, revenue and profits be paid to the life beneficiaries?

As the only value of the stock is based upon the value of the land, the necessary computations can be made in terms of price per acre of the land. Assuming, for illustration only, that the land was worth one thousand dollars per acre at the time the trust estate vested, every acre since sold at the one thousand five hundred dollar rate represents an advance of five hundred dollars, or one-third of the total. So long as this ratio exists between the basic price representing the stock interest of the trust estate and the selling price, whatever dividends are declared should be divided in that proportion. If other portions of the tract are sold at a greater or less advance in price over the fixed value due the *corpus* of the trust estate, the proportion of profits to the life interests will vary accordingly.

The dividends from these sales, of course, represent both principal and interest derived from the sale of land, less the operating costs and liabilities of the corporation, but there is no reason why this fact should alter the ratio of the division.

The order appealed from is reversed, with directions to the probate court to ascertain and fix the value of the stock of the F. & K. Land Company belonging to the trust estate as of date June 1, 1914, and to apportion respectively between the remainder interest and the life beneficiaries any dividends arising from subsequent sales by the corporation, on the basis of the ratio between the value of the land at date June 1, 1914, and the advanced price at which such sales have been and may be made.

Shaw, J., Olney, J., Wilbur, J., Lawlor, J., Lennon, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.