*1136 OPINION.
VaN FossaN :
The major issue before us is whether or not the fair market value in-January and February 1927 of the Standard Oil Co. stock delivered to the petitioners at such time constituted taxable income. If the respondent be not sustained in full'in this contention but it be held that income in some amount accrued, the petitioners concede that the value of the remainders passed to them in that year is income under section 219 (f) of the Revenue Act of 1926.[2] They further agree to forego their right to refunds in case the value of those remainders is found to be less than the income reported by them in the taxable year on account of the transaction.
The facts involved in this issue may be summarized briefly. On March 10, 1921, the stockholders of the Standard Oil Co. of California became convinced that it was for the best interests of the corporation to be assured of the continuous service of its officers for a period of five years and that in order to do so the officers should be offered a bonus, or special or additional compensation. Negotiations to that end resulted in the execution of the agreements of April 18, 1921, set forth in the findings of fact.
The salient provisions of that agreement were that the officer should continue his services for a period of five years from March 28, 1921, and that the company would create a trust by paying a definite amount of money to the trustee, who should purchase with it Standard Oil Co. stock. That stock, together with any securities received in liquidation or reorganization and any stock dividends thereon, was to be held by the trustee for the period of five years, provided the officer remained with the company, and, subject to the condition of his remaining with the company for the five-year period, *1137 the income from the trust fund was to be paid to him for life. At his death the trust was to terminate and the trust fund was to be delivered to snch heirs of the officer as he might have appointed by his will. The agreement was subject to modification by the written consent of the officer and the company. If the officer should leave the service of the company the trust was to end, the payments of the income should cease, and the corpus was to revert to the company. During the five-year period the disability of the officer while in the company’s service did not abrogate the contract and, upon his death, under such conditions, the trust fund was to' be delivered to the designated remaindermen.
The funds so provided for were paid to the trustee and the trustee proceeded to purchase the stock for the benefit of the several trusts, as directed in the trust instruments, and to pay the officers the income therefrom currently. All of the officers remained with the company during the entire five-year period which expired March 28, 1926. Some time after it expired, the company, through its stockholders and a special committee named for the purpose, and the officers, modified the agreements of April 18, 1921, by providing that the corpus of the trust should be transferred to the officers as their “ free and unrestricted property ” and the trust be terminated. The modifying agreements were dated September 8,1926, but were not executed fully until January 28,1927 (February 12, 1927, as to E. J. Hanna), on which dates the stock was delivered to the petitioners.
On examination of the agreements it is obvious that during the five-year period the officers owned nothing but a right to receive the income from the trust fund from day to day as it currently accrued, subject at all times to the condition precedent of their continuing in the service of the company. Cessation of that service for any cause except disability or death defeated all right to income and corpus and nullified the power to designate the remaindermen. Conversely, the company held the potential' right of repossession during the entire term and only at its expiration and after the officers had remained in its service throughout that period did it relinquish that right. In 1926, however, the right of the petitioners to receive the income from the trust fund for life matured completely and unconditionally. The condition being fully performed, the life estate and the power of appointment vested.
It is clear that the underlying and motivating reason for paying the “ bonus ”, or additional compensation, to the officers was to induce them to remain with the company for five years. At the moment that condition was fulfilled the officers became possessed of a valuable right which unquestionably was property. Eetention of the title by the trustee did not affect the rights so acquired or prevent their *1138 vesting. Henry v. United States, 251 U. S. 393; Schneider v. Duffy, 43 Fed. (2d) 642. The value oí the right so acquired became income in that year. Schaefer v. Bowers, 50 Fed. (2d) 689, and cases there cited.
In the application of the income and estate tax laws to given sets of facts, we are often met by situations in which absolute accuracy or mathematical certainty can not be established. In such situations resort must be had to those methods of determination most likely to represent substantial, or probable, accuracy. In this category of cases would fall the valuation of life estates, or remainders. Necessarily, any value assigned to a life estate or a remainder must be predicated on certain assumptions. But the problem is not for that reason insoluble. The Supreme Court has said that the value of a life estate is “ to be determined by ascertaining in terms of money what the property constituting that interest would bring.in the market, subject to such uncertainty as ordinarily attaches to such an inquiry. United States v. Provident Trust Co., 291 U. S. 272. Similar observations apply as to remainders.
In the instant cases we may start with the assumption that the. value of the life estate, plus the value of the-remainder, represents the total value of the stock. Likewise, it seems reasonable to conclude that a power of appointment as to the remainder of property subject to a life estate, limited only in that appointment may be exercised only on behalf of one’s heirs, is a property right of substantial value. Though less than the entire value of the remainder, in that ownership of the remainder includes, inter alia, the present power of disposition, it is, nevertheless, a valuable property right. The life estate and the power of appointment having vested in the officers in 1926, it follows that the value of the property that passed in 1927 under the supplemental agreements must be the residuum, after deducting the value of the property theretofore vested.
Respondent’s contention is based on the erroneous assumption that there was no taxable event in 1926 and overlooks the fact that’, under the original contract, upon the expiration of the five-year period, the life estate in the income and the limited power of appointment as to the remainder both vested in the officers. If respondent’s position, that the first taxable event occurred in 1927 when title to the corpus was transferred, be sound, it would seem to be a simple matter for recipients of income under circumstances such' as these to avoid tax. Assume that the parties had not elected to enter into the second contract but the matter rested on the first agreement-alone. If respondent’s contention be adopted and it be held there was no taxable event in 1926, no tax would ever be collected from the parties-who received and enjoyed such life estate and power of ap *1139 pointment. • Neither would there seem to be any basis for collecting the'income tax from the heirs who might take under the wills of the several officers. Thus the income would never be taxed.
Eespondent cites Commissioner v. Olson, 24 B. T. A. 702; affd., 67 Fed. (2d) 726, and Schaefer v. Bowers, supra. In our-judgment these cases clearly support the conclusion that a taxable event occurred in 1926.
■ Applying the above premises to the facts before us, we have found (1) the reasonable values of the life estates in 1926, (2) the reasonable values in 1927 of the remainders without deduction of any value for the power of appointment, and (3) the amount determined by each petitioner as the value of property received in 1927, the figures used being the cost to the company in 1921 of the stock placed in the respective trust funds. On analysis of these figures it will be seen that as to petitioners Kingsbury, Warner, Harper, and Storey the value of the remainder is less than the value returned by them, respectively, in their 1927 tax returns. Obviously, therefore, no additional tax is due from these petitioners on account of the receipt of the stock in that year. As hereinbefore noted, petitioners, by their counsel, have waived all rights as to any refunds that might be due consequent on the determination by the Board of the value of the property received in 1927.
As to petitioners Hanna -and Hillman, the amount returned is less than the value of the remainder — in the case of Hanna in the amount of $26,264 and-in that of Hillman in the amount of $13,626. Though we have indicated that the power of appointment which vested in 1926 was a valuable right and if such value were proven would reduce the value of the remainder which passed in 1927, we have no evidence of such value and are, consequently, unable to find that any figure less than the value of the entire remainder should be used in computing the tax due.
Though the above stated conclusions are dispositive of the major issue, a passing word may be in point as to petitioners’ contention that the portion of the stock dividends declared and issued on December 30, 1922, attributable to the earned and undistributed surplus of the company accumulated by it between April 18,1921, and December 31,1922, or 18.17 percent thereof, became their property upon issuance and was distributable and taxable to them at that time. They contend that the value of the shares of stock so issued to the trustee was income to the officers in 1922; that such stock was constructively received by the trustee for their benefit; that the amount of such surplus was definitely determined; that they could have forced the trustee to deliver the stock to them at the time; and that, hence, such stock became their property, distributable and taxable to them in 1922. In support of this position they assert that under California *1140 law [3] a stock dividend which represents earned surplus accumulated after the creation of the trust belongs to the life tenant or beneficiary and is lawfully distributable to him immediately upon its issuance. They cite Estate of Duffill, 180 Cal. 748; 183 Pac. 337; Estate of Gartenlaub, 185 Cal. 375; 197 Pac. 90; Estate of Schnur, 25 Pac. (2d) 462.
The fallacy in petitioners’ argument lies in their assumption that in 1922 their interest in the trust amounted to a life estate. The petitioners acquired no vested rights in either the income or the corpus of the trust until 1926, when the five-year period expired. At that time they acquired a life estate in the income and a power of appointment as to the remainder. This being the situation, it can not be held that the accretion to the trust by way of a stock dividend in 1922 became vested in the officers at that time. The cases cited, which presuppose an existing life estate, are not in point.
Moreover, it is to be remembered that we are dealing with income arising under Federal taxing acts. The Supreme Court has held that under such laws stock dividends are not income. Eisner v. Macomber, 252 U. S. 189. In this case the stock dividend was not income per se. The stock arising from the dividend gives rise to income only by virtue of being transferred to petitioners as additional compensation, a very different and wholly unrelated concept. For this reason the California statute against accumulation of trust income can have no application. Nor does it matter that the California courts take a different view of the character of a stock dividend and hold it to be income in some instances.
On brief respondent raises the question of estoppel against petitioners .because they did not return the values of the life estates and the powers of appointment in 1926. It is perhaps sufficient to observe that estoppel must be both pleaded and proved. In the instant cases it was neither pleaded nor does the record reveal the facts necessary to establish the same.
In Docket No. 56382 K. It. Kingsbury, the petitioner, asserts that because of the refusal of the collector of internal revenue for the first district of California, in which he resided, to permit him and his wife to file separate returns on a community property basis, he was compelled to file his own return on a single form, including therein the community property of them both. He claims that his intent to file separate returns is deducible from the protest attached to his return and that, therefore, he must be deemed to have elected to file separate returns. Consequently, he asserts, the community income received subsequent to July 29, 1927,[4] should be taxed equally to himself and his wife..
*1141 The record contains no evidence that the collector refused to accept the returns of the petitioner and his wife on a community property basis, nor that the petitioner tendered such returns either before or after March 15, 1928. The return filed states that it is a joint return. So far as we are advised no amended returns were ever offered or filed. No segregations of income into individual and community sources were made. The facts presented do not warrant the conclusion that Kingsbury and his wife elected to file separate returns or that one half of the petitioner’s income received from July 29 to December 31, 192-7, is taxable to his wife. . Cf. L. B. Foster, 26 B. T. A. 1328; Garland C. Kent, 27 B. T. A. 1055.
All other issues raised by the pleadings and not abandoned by the petitioners may be settled in accordance with the stipulations of record.
Reviewed by the Board.

Decision, will be entered under Rule 50.

 Sec. 219. (f) A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, bo which contributions are made by suebl employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under this section, but the amount actually distributed or made available bo any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in‘by him. Such distributees shall for the purpose of the normal tax be allowed as credits such part of the amount so distributed or made available as represents the items specified in subdivisions (a) and (b) of section 216.

 Secs. 722, 723, 724, 726, Civil Code of California.

 See United States v. Malcolm, 282 U. S. 792.