# ANNIE GARVIE EVANS *v.* JAMES GARVIE AND BISHOP TRUST COMPANY, LIMITED, TRUSTEE.

## No. 989.

### SUBMISSION WITHOUT ACTION.

SUBMITTED MARCH 15, 1917.          DECIDED MARCH 23, 1917.

### ROBERTSON, C.J., QUARLES AND COKE, JJ.

TRUSTS—*corporations—apportionment of extraordinary dividends between life tenant and remainderman.*

Where shares in a corporation are left in trust for the benefit of remaindermen, the annual income therefrom being payable to another, an extraordinary stock dividend declared upon accumulated earnings of the corporation which accrued partly before and partly after the institution of the trust should be apportioned between the respective interests, so much of the dividend as represents earnings which accrued after the creation of the trust, less any premium on the shares in the market immediately after the declaration of the dividend, being distributable to the person entitled to receive the income, the remainder belonging to the corpus.

SAME—*same—extraordinary dividend based on increased value of corporation's property.*

A stock dividend upon shares held in trust which represents a natural increase in the value of land owned by the corporation is merely a change in the form of ownership and belongs to the corpus of the trust fund.

OPINION OF THE JUSTICES BY ROBERTSON, C.J.

This is a submission upon agreed facts in which it is made to appear that Annie Garvie, now Annie Garvie Evans, on January 8, 1909, being the owner of certain real estate and certain personal property, including twenty-eight shares of the capital stock of the Oahu Railway and Land Company and eighty-five shares of the capital stock of the Oahu Sugar Company, Limited, conveyed and transferred the same to the Bishop Trust Company, Limited, upon trust (subject to certain terms and conditions not material here) to hold and manage the same and to collect the income thereof and to pay the net annual income to her, the said Annie Garvie, until James Garvie, her son, shall attain the age of twenty-one years, and then to convey and deliver to the said James Garvie one-half of the property and to hold the remaining half in trust for the said Annie Garvie absolutely; that James Garvie is now of the age of sixteen years; that on July 1, 1912, the Oahu Railway and Land Company increased its capital stock from $4,000,000 to $5,000,000 by the issue of new shares to its stockholders as a stock dividend, whereby the trustee received seven additional shares of said stock; that on January 8, 1909, the railway company had a credit of undivided earnings in its profit and loss account of $432,800.60; that on July 1, 1912, and immediately before the declaration of the stock dividend, the amount of undivided earnings of said company was $783,436.36; also that at the time of the declaration of said stock dividend, and as an incident thereto, the valuation of the fee simple land of said company was increased, on the books of said company, in the amount of $255,515.75,

which said sum represents the increase in the value of the fee simple land from March 1, 1901, to July 1, 1912; that from said increase in the value of the land and in the amount of undivided earnings, aggregating $1,038,952.11, the said stock dividend was declared, and the sum of $38,952.11 was carried forward on the books of the company as undivided earnings after the declaration of the stock dividend; that the stock of the railway company is of the par value of $100 per share; that on January 8, 1909, the stock was of the market value of $115, while on June 30, 1912, the market value was $170, and on July 1, 1912, upon the declaration of the stock dividend, the market value was $136 per share. That on December 31, 1912, the Oahu Sugar Company increased its capital stock from $3,600,000 to $5,000,000, by the issue of new shares, whereby the trustee received thirty-three additional shares of said stock; that on January 8, 1909, the company had a credit of undivided earnings in its profit and loss account of $985,000; that on December 31, 1912, immediately before the declaration of the stock dividend, the amount of undivided earnings of said company was $1,745,000; that upon the declaration of the stock dividend of $1,400,000, a credit of $345,000 remained as a balance of undivided earnings in the profit and loss account; that the stock of the Oahu Sugar Company is of the par value of $20 per share; and that on January 8, 1909, the stock was of the market value of $28.12½, while on December 30, 1912, it was of the market value of $40, and on December 31, 1912, upon the declaration of the stock dividend, it was of the market value of $29.50 per share. A controversy has arisen as to the division of the shares derived from these stock dividends between Mrs. Evans and her son under the terms of the trust instrument.

On behalf of Mrs. Evans it is contended that she is entitled to all of the shares of the railway company's stock less only such proportion thereof as was represented by the

proportional increase in the value of the fee simple land of the company from January 8, 1909 (the date of the institution of the. trust), to July 1, 1912 (the date of the declaration of the stock dividend), and the premium value on the shares of· stock on July 1, 1912, after the dividend was declared, and that she is entitled to all of the shares of the sugar company's stock less only the small proportion thereof as was represented by the premium value on the same on December 31, 1912, after the declaration of the stock dividend. It is urged that a stock dividend declared from accumulated earnings of a corporation after the creation of a trust is to be regarded as income; that no attempt should be made to apportion the dividends in question with reference to the time, before or after the date of the institution of the trust, when the earnings accrued, but that both the dividends, except a portion of that of the railway company which rested upon the increase in the value of land, should be treated as income distributable as of the dates on which the dividends were declared; and that so much of the dividend of the railway company as was represented by the increased value of its land immediately prior to January 8, 1909, which counsel would have determined by prorating the total amount of such increased value between the two periods from March 1, 1901, to January 8, 1909, and from the latter date to July 1, 1912, should also be regarded as income. Counsel for the guardian of the minor contends that these dividends should be apportioned between capital and income with reference to the time when the surplus earnings accrued; that such portion as had accumulated at the date of the institution of the trust should 'be regarded as belonging to the corpus of the trust estate and such only as accrued after that date can be treated as income; and that so much of the dividend of the railway company as represented an increase in land values belongs entirely to the corpus. Aside from the question of apportionment both

counsel concede that as upon the declaration of the stock dividends the shares of each of the companies were at a premium on the market such proportion of the shares is to be considered as income as, had the dividends been declared in cash, could have been purchased at the market price.

In *Carter* v. *Crehore*, 12 Haw. 309, upon a careful examination of the several theories respecting the disposition of extraordinary dividends of corporations where the respective interests of life tenants and remaindermen are opposed, it was held that a stock dividend representing earnings which had accumulated after the creation of the trust should be regarded, up to the par value of the new stock, as income payable to the life tenant and that the balance representing the right to take the new stock at par, or the depreciation in the value of the old stock, should be held by the trustees as part of the corpus of the estate. We regard so much of the law on the subject as was applied in that case as settled in this jurisdiction. The further question is now presented in this case as to whether, where it is shown that the surplus income which has been appropriated by the corporation as against the new issue of shares, was earned partly before and partly after the institution of the trust should go entirely to the life tenant or be apportioned between the life tenant and the remainderman.

"The Pennsylvania rule holds, with the later English rule, that earnings are not income to the shareholder until so appropriated by the corporation, but does not go to the extent of that rule in holding that such appropriation when made is conclusive as between the life tenant and remainderman or that the testator must have intended that the mere way in which the corporation appropriated earnings, should determine whether they should go to the life tenant or remainderman; and holds on the other hand, with the early English rule, that the testator must have regarded the accumulations of earnings at the time of his death as capital to be held for the remainderman, but does not go

to the extent of that rule in holding that it is impracticable to ascertain what was earned before and what after his death. Accordingly the Pennsylvania rule when an extraordinary dividend is declared, whether in cash or stock, apportions it, giving to the life tenant what was earned during the life tenancy and holding for the remainderman what was earned before the life tenancy began." 12 Haw. 319.

"The three courts which follow the rule of apportionment have found great difficulty in applying it and a different method of ascertaining how the apportionment should be made has been adopted by each. This rule is open to grave objections, both theoretical and practical, but we need not express an opinion as to whether they are more weighty than the objections made to the rule of non-apportionment, for in the present case it appears that the profits out of which the dividend was declared were earned during the life tenancy, and therefore whether the rule of apportionment or that of non-apportionment should be followed the dividend so far as it represented earnings would all go to the life tenants." Id. 320.

Nevertheless the opinion in that case shows that where a stock dividend represents partly a natural increase in the value of the corporation's property and partly accumulated profits an apportionment becomes necessary. And it was held in that case that an apportionment was required to prevent a depreciation of the corpus by reason of the shares being at a premium after the declaration of the stock dividend. 12 Haw. 326. That the troublesomeness of the subject of the distribution of extraordinary dividends upon corporate stock held in trust, which was noted in *Carter* v. *Crehore*, has not abated is shown by the notes in 12 Ann. Cas. 650, 23 id. 1218, 35 id. 311, 12 L. R. A. N. S. 768, and 50 id. 510.

At bottom it is a matter of determining the intention of the creator of the trust. In the trust instrument in hand extraordinary dividends are not mentioned, but it is a natural inference that it was the intention that the integrity of the corpus should be preserved for the benefit of

the remaindermen while all income to accrue therefrom should be paid to the person entitled to it—in this case, the donor herself. We think it a further natural inference that surplus earnings already accumulated and which should not be paid out as ordinary cash dividends were regarded as of the corpus. The intent that the apportionment of extraordinary dividends should be made is, we believe, fairly inferable from a general direction to a trustee, such as we have here, to hold and manage the property, to collect the income thereof and to pay the net annual income to a designated person. Such intent should be effectuated if possible. The common law rule against the apportionment of moneys applies to such as are payable periodically or at fixed times, and may be extended to ordinary dividends of corporations though not declared at regular intervals, but no good reason requires that it be applied to extraordinary dividends. The great difficulty said to be involved in ascertaining the time when and source from which surplus profits have accrued, and in making an equitable apportionment between the respective interests, which seems to be the basis of the arbitrary rule against making an apportionment, seems to us not to furnish a satisfactory reason for the rule. Courts are not unaccustomed to deal with complicated questions of fact. Possibly the supposed difficulty has been overestimated. It may not infrequently happen that the facts, so far from being difficult to ascertain, will be clear and undisputed so that the parties will not be under the necessity of appealing to a court. In the case at bar the facts are agreed upon. Such was the case also in *In re Tod,* 147 N. Y. S. 161. In the case of *Matter of Osborne,* 209 N. Y. 450, the facts were undisputed. And in a number of Pennsylvania and New Jersey cases which we have examined there seems not to have been much difficulty in establishing the facts. Should a case arise in which it is impossible to ascer-

tain the facts it may have to be decided upon presumptions, and if there should be complications which render the rule of apportionment difficult of application doubtless some way of approximating an equitable division will be devised by the court. Where, as here, the material facts have been agreed upon, and it is not contended that there are not sufficient facts before the court to enable it to make a fair apportionment of the dividends nothing but a fiixed rule against making an apportionment in any case, which seems to be generally conceded to be a rule marked by simplicity rather than by fairness, can stand in the way of making an apportionment. The Pennsylvania rule commends itself to our sense of justice. It seeks and tends to obtain for the respective parties just what it is reasonably presumed the creator of the trust intended them to have. This rule has recently been espoused by the court of appeals of New York in *Matter of Osborne, supra.* In that case the court said,

"Notwithstanding the difficulty in many cases of apportioning dividends, it is wiser and better to leave an apportionment to courts of equity, in preference to adhering to a rule that depends more upon its simplicity and convenience of enforcement than upon justice and right. The distinction between ordinary and extraordinary dividends is necessary to make a workable rule and at the same time preserve the integrity of the trust fund. The integrity of the trust fund and rights of the life beneficiary under the trust should each be considered, determined and preserved by a court of equity." And held that "Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund." 209 N. Y. 477.

We find no merit whatever in the contention of counsel for Mrs. Evans that so much of the stock dividend of the railway company as represented the natural increase in the value of land at the date of the trust instrument should be regarded as income. One would suppose that if the amount of the increased value could be apportioned at all such portion would go to the life tenant as accrued after the creation of the trust. But it is well settled that a stock dividend which represents the natural increase in the value of the permanent property of a corporation is merely a change in the form of ownership and belongs to the corpus of the trust fund. *Carter* v. *Crehore, supra; Estate of Cummins,* 16 Haw. 185, 192; *Kalbach* v. *Clark,* 133 Ia. 215; *Hite* v. *Hite,* 93 Ky. 257, 267; *Holbrook* v. *Holbrook,* 74 N. H. 201, 204.

We hold that the dividends should be apportioned in accordance with the foregoing views. Of the seven shares of the Oahu Railway and Land Company stock, Mrs. Evans is entitled to receive as income 1.805 shares as representing the proportion which the amount of earnings appropriated to capital accruing after January 8, 1909, ($350,635.76) bears to the total dividend ($1,000,000) as affected by the premium on the stock in the market ($36) immediately after the declaration of the dividend. Of the thirty-three shares of the Oahu Sugar Company stock, Mrs. Evans is entitled to receive as income 12.08 shares as representing the proportion which the amount of earnings appropriated to capital accruing after January 8, 1909, ($760,000) bears to the total dividend ($1,400,000) as affected by the premium on the stock in the market ($9.50) immediately after the declaration of the dividend. The remaining shares, 5.195 of the Oahu Railway and Land Company and 20.92 of the Oahu Sugar Company, will be held by the trustee as belonging to the corpus of the trust estate.

A judgment in favor of Mrs. Evans against the trustee in accordance with this opinion may be entered.

*W. B. Lymer* for Mrs. Evans.

*W. L. Stanley* for the guardian of the minor.