IN THE MATTER OF THE TRUST ESTATE OF FRIEDRICK WEBER, DECEASED.

No. 2253.

ARGUED MARCH 9, 1937.　　　　　　DECIDED APRIL 2, 1937.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE METZGER IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

This appeal brings up for review an order of the circuit judge of the first judicial circuit entered in the court below on September 23, 1935.

William Weber, a resident of Honolulu, died testate on September 23, 1922. His last will was duly admitted to probate in the circuit court and letters testamentary were issued to parties nominated in the will as executors. At the close of the proceedings in probate on July 5, 1923, the residuary estate, in accordance with the terms of the will, was distributed to the trustees designated by deceased, namely, Hattie K. Weber, widow of deceased, Ernest Cropp, his son-in-law, and the Hawaiian Trust Company, Limited, an Hawaiian corporation. The estate was of large value and included in the assets were 1150 shares of the capital stock of the Ewa Plantation Company, Limited, a local sugar-producing concern. 150 shares of this stock were sold by the executors so that 1000 shares thereof were included in the residuary estate distributed by the executors to the trustees. Under the provisions of the will the net income from the estate is distributable one-half to Hattie K. Weber, the widow, $100 per month to Madeline Cunningham and the remainder to Lulu Cropp, daughter of the deceased, or in case of her death to her issue. The trust will terminate upon the death of the widow Hattie K. Weber and upon such termination $20,000 or its equivalent in assets shall be distributed to Madeline Cunningham if she then be alive and the remainder shall become the property of those who shall then be surviving of Lulu Cropp and her children, each child to take the same amount as its mother. Hattie K. Weber, Madeline Cunningham and Lulu Cropp are still living; the latter has two minor children,

namely, Helen Elizabeth Cropp and George Ernst Friedrick Cropp.

In February, 1935, the trustees filed in the circuit court their twelfth annual account covering the period from November 8, 1933, to November 7, 1934, inclusive. In schedule C of the trustees' account it appears that in December, 1933, the trustees received $9450 "special distribution from surplus of $10.00 on 1,000 shares Ewa Plantation Co. $10,000. less 5½% tax $550.00." This $9450 represents the net proceeds received by the trustees of an extraordinary cash dividend of $10 per share distributed by the Ewa Plantation Company to its stockholders on December 20, 1933, and was credited by the trustees to the account of trust principal.

The circuit judge appointed a master to examine the account and report his findings who in due time filed a report approving the account and recommending its allowance "with the exception of the aforesaid allocation of the proceeds of the extraordinary cash dividend of Ewa Plantation Company entirely to Principal." The master recommended that the court make "its finding as to the intention, if any, of the Testator as expressed in the Will with respect to the distribution of extraordinary cash dividends between the life beneficiary, his wife, and the remaindermen and direct said Trustees to act accordingly." And the master further recommended that if no such intention be found the court determine which of the divergent rules of law should be followed by the trustees in the allocation of the proceeds of the extraordinary cash dividend.

Exceptions to the master's report were interposed by one of the trustees, namely, the Hawaiian Trust Company, Limited. It becoming apparent that the life tenants as well as the remaindermen had an interest in the issues presented by the master and the corporate trustee, the court ordered that all of the parties in interest be cited to appear

on the 27th day of May, 1935, at 10 o'clock a. m., the time fixed for the hearing. In the meantime Gerald R. Corbett of the local bar was appointed guardian *ad litem* of the two minor remaindermen, namely, Helen Elizabeth Cropp and George Ernst Friedrick Cropp and an order establishing class representation was duly made and entered. The life tenants Hattie K. Weber and Lulu Cropp appeared by counsel and filed their joint answer and objections to the account of the trustees alleging that the item of $9450 "constituted and was received by said Trustees as income." The guardian *ad litem* appeared and interposed exceptions to the master's report and joined issue with the answer of the life tenants, the guardian *ad litem's* position being identical with that of the Hawaiian Trust Company, Limited, namely, that the whole amount of the net proceeds of the extraordinary cash dividend as shown on schedule C of the trustees' account "constituted and was a special distribution from surplus profits earned and accumulated by said Ewa Plantation Company prior to September 23, 1922, the date of the inception of said trust" and "that the payment of said extraordinary cash dividend on December 20th, 1933 effected a reduction in the intrinsic value of the said 1000 shares of stock, as the same existed on September 23, 1922, which said reduction amounted to more than $10. per share" and "that said extraordinary cash dividend entrenched upon the corpus of said trust estate to the extent of the total amount of said dividend" and that "the sum of $9,450. has been properly credited to principal of the said trust estate as shown on said Schedule 'C' of said account." The guardian *ad litem* joined the trustees in the prayer for approval and allowance of the account as presented.

Upon these issues hearings were had, all parties being present, at which annual reports of the Ewa Plantation Company, including balance sheets, for the years 1921-1923 inclusive, were introduced and brief oral evidence was

given by Henry A. White, at that time treasurer of the Ewa Plantation Company. Some months after the conclusion of the hearings the circuit judge filed his decision followed by an order directing the trustees to pay over to the life beneficiaries Hattie K. Weber and Lulu Cropp the net proceeds of the extraordinary cash dividend amounting to $9450 less the trustees' commission and otherwise approving the trustees' annual account. From this order the guardian *ad litem* has appealed. Hattie K. Weber and Lulu Cropp, the life beneficiaries, have abandoned the litigation, neither appearing in this appeal.

The master came to the conclusion that 72.736% of the total amount of the extraordinary cash dividend represented surplus which had accumulated prior to the inception of the trust and that the remainder of the dividend, to wit, 27.264% was paid out of a surplus which accrued subsequent to the inception of the trust. The master, however, requested the court to construe the will in order to determine whether the creator of the trust had directed the manner in which extraordinary cash dividends should be distributed. The circuit judge held that extraordinary cash dividends, regardless of whether the surplus out of which they were paid accrued prior or subsequent to the inception of the trust, should be treated as income and were distributable to the income takers. This conclusion is founded upon the circuit judge's construction of the language contained in the will. He says: "The will clearly shows the intention of the testator as to the disposition of income. He specifically provides that stock dividends shall be treated as principal and not income; without this express provision it is clear under the authorities that there would be an apportionment of any such dividends between corpus and income." The court apparently had in mind the clause in the will which provides that the board of trustees "shall consider, hold and treat all stock dividends received

by it, being dividends in the form of capital stock issued by corporations, shares of the capital stock of which form part of said trust estate, as principal and not as income of said trust estate." See subdivision (f), article 4, of the will of the testator.

From our investigation of the record we conclude that both the master and the circuit judge were in error. The master, we think, in ascertaining the amount of earned surplus of the company on hand at the date of the inception of the trust, failed to take into consideration elements which would have increased the surplus to an amount exceeding the sum distributed as extraordinary cash dividend and we find no language in the will which supports the construction placed thereon by the circuit judge.

The date of the creation of the trust is the date of the testator's death. The parties have so stipulated. (And see also *Rhode Island Hospital Trust Co.* v. *Peckham,* 107 Atl. 209; *In Re Davis' Estate,* 217 N.Y.S. 605; *Estate of Gartenlaub,* 185 Cal. 375.) Counsel for the corporate trustee and the guardian *ad litem* in person have filed able and exhaustive briefs and have orally argued the questions involved at length.

The absence of any appearance before this court either in person or by counsel of the life tenants has cast upon us the burden of a careful investigation of the financial setup of the plantation company during the eleven years involved. This burden has been made increasingly difficult due to the lack of uniformity in the accounting system of the company reflecting its financial structure. We are confined solely to the company's annual reports to its stockholders with balance sheets attached and to the very brief testimony of Mr. White.

From this investigation we reach the conclusion that the extraordinary cash dividend of $10 per share distributed to the trustees of the Weber estate was paid out of

surplus accumulated prior to the death of the testator and that the payment to the extent thereof entrenched upon the intact value of the trust estate as that value existed on September 23, 1922.

There is a direct conflict and disagreement among the courts of the United States in reference to the question here involved. Three distinct rules (and perhaps others) have been adopted and are referred to in section 5389, et seq., 12 Fletcher Cyc. Corp., and also in 14 C. J. 828-833.

The Massachusetts rule is one of expediency and is wholly arbitrary. It requires that all cash dividends, whether ordinary or extraordinary, are deemed to be income and all stock dividends are to be treated as corpus. (*Lyman* v. *Pratt,* 183 Mass. 58.) Under the Kentucky rule, which has been followed in some States, all dividends received during the life of the estate paid from the earnings of a corporation, regardless of whether the same accumulated prior to or after the inception of the trust, are treated as income without regard to whether they are in the form of ordinary, extraordinary or stock dividends. The Pennsylvania rule, which was approved by this court in *Carter* v. *Crehore,* 12 Haw. 309, and again in *Evans* v. *Garvie,* 23 Haw. 651, and is approved also in many other jurisdictions and which is sometimes and perhaps erroneously referred to as the American rule, places extraordinary cash dividends and stock dividends paid to a trustee on shares of stock held by it in the same class. All such dividends are treated as income in so far as they represent earnings of a corporation which accumulated subsequent to the inception of the trust because they do not reduce the intact value of the shares to less than the value thereof at the time the trust was created. But such dividends are deemed to be corpus to the extent that they are paid out of earnings which had accumulated prior to the inception of the trust and hence tend to reduce the value of the shares below the

intrinsic value thereof as such value existed at the time the trust came into being.

In *Carter* v. *Crehore, supra,* this court said: "As we have seen, the early English rule gave all extraordinary dividends, cash or stock, to the remainderman on the grounds that the testator must have regarded as capital the earnings accumulated before his death and used as actual capital though not represented by stock and that it was impracticable to ascertain what were earned before and what after his death. And the later English rule gives all cash dividends to the life tenant and holds all stock dividends for the remainderman, because earnings belong to the corporation and are represented by the stock and are not income to the stockholders until set aside as dividends and dividends when declared go under corporation law to the person entitled at the time, and the testator must have intended that earnings should be considered capital or income according to the usual rules of corporation law. The Pennsylvania rule holds, with the later English rule, that earnings are not income to the shareholder until so appropriated by the corporation, but does not go to the extent of that rule in holding that such appropriation when made is conclusive as between the life tenant and remainderman or that the testator must have intended that the mere way in which the corporation appropriated earnings, should determine whether they should go to the life tenant or remainderman; and holds on the other hand, with the early English rule, that the testator must have regarded the accumulations of earnings at the time of his death as capital to be held for the remainderman, but does not go to the extent of that rule in holding that it is impracticable to ascertain what was earned before and what after his death. Accordingly the Pennsylvania rule when an extraordinary dividend is declared, whether in cash or stock, apportions it, giving to the life tenant what was

earned during the life tenancy and holding for the remainderman what are earned before the life tenancy began. *Earp's Appeal,* 28 Pa. St. 368; *Moss' Appeal,* 83 Pa. St. 269; *Biddle's Appeal,* 99 Pa. St. 278; *Oliver's Estate,* 136 Pa. St. 43; *Smith's Estate,* 140 Pa. St. 344; *Eisner's Appeal,* 175 Pa. St. 143. This rule differs from the later English rule in that it (1) treats cash and stock dividends alike and (2) apportions dividends according to the time when they were earned."

The subject is treated in Corpus Juris from which we quote: "While the courts are agreed that the intention of the testator, when ascertainable, controls in determining whether dividends on corporate stock held in trust are capital or income, and that a dividend representing a distribution of capital assets, rather than earnings, ordinarily belongs to the corpus and not the income of the trust estate, there is considerable conflict of authority on the question whether, in the absence of a declaration of testamentary intent, stock dividends representing earnings made by the corporation subsequent to the inception of the trust are to be regarded as capital or income of the trust estate. As in cases wherein the question arises between life beneficiaries and remaindermen generally, so in cases arising under testamentary trusts, some courts adopt and follow the so-called Massachusetts rule. Under this rule, which has been characterized as one of convenience, and which is based on the character of the dividend, all cash or property dividends, whether ordinary or extraordinary, and no matter how large, are regarded as income, and all stock dividends are regarded as capital, regardless of the period of time during which the earnings, out of which they are declared, were made or accumulated. Other courts adopt and follow what is variously known as the Pennsylvania, American, or apportionment rule. Under this rule, which is based on the time of the accumulation of the earnings out of which the

dividend is declared and paid, extraordinary dividends from corporate earnings, whether paid in cash or stock, are to be regarded as principal or income or are to be apportioned between principal and income accordingly as the earnings out of which they are declared and paid were accumulated before, after, or partly before and partly after, the inception of the trust; and in most jurisdictions following this rule ordinary cash dividends are regarded as income, regardless of the time of the accumulation of the surplus out of which they are payable and regardless of how soon after the testator's death they are declared, although in at least one jurisdiction, they are apportioned the same as other dividends. A smaller number of courts apply the so-called Kentucky rule which is based on the time of the declaration of the dividend and under which a dividend declared out of earnings, whether of stock or cash, ordinary or extraordinary, and regardless of the time when it was earned, is regarded as corpus or income accordingly as it was declared before or after the inception of the trust." 69 C. J. 776 to 779. (See also Restatement of the Law of Trusts, p. 701.)

While it is true in both *Carter* v. *Crehore, supra,* and *Evans* v. *Garvie, supra,* this court was dealing with an extraordinary stock dividend, it made clear however in these opinions that the court drew no distinction between that type of dividend and extraordinary cash dividends so that in this jurisdiction the Pennsylvania rule of distribution has been approved and adopted. In *Evans* v. *Garvie, supra,* it is said: "In the trust instrument in hand extraordinary dividends are not mentioned, but it is a natural inference that it was the intention that the integrity of the corpus should be preserved for the benefit of the remaindermen while all income to accrue therefrom should be paid to the person entitled to it—in this case, the donor herself. We think it a further natural inference that sur-

plus earnings already accumulated and which should not be paid out as ordinary cash dividends were regarded as of the corpus." And in the same opinion it is further stated: "The Pennsylvania rule commends itself to our sense of justice. It seeks and tends to obtain for the respective parties just what it is reasonably presumed the creator of the trust intended them to have."

Under some circumstances of course the extraordinary dividend might be derived partly from the normal enhancement of the value of the corporate property and partly from accumulated profits prior to the inception of the trust in which case of course the dividend should be apportioned between income and corpus. As already indicated the trust instrument must be resorted to in order to determine, if possible, the intention of the creator of the trust and such intention, if expressed, becomes the law of the case.

Having reached the conclusion that the extraordinary cash dividend amounting to the net sum of $9450 paid to the trustees upon the Ewa Plantation stock held by them was a distribution of surplus earnings which accrued prior to the inception of the trust and the further conclusion that the so-called Pennsylvania rule has been adopted in this jurisdiction it necessarily follows that the dividend became, upon its receipt by the trustees, a part of the corpus of the estate unless the will of the testator provides a different method of allocation. The will in question was executed some years subsequent to the decisions of this court in *Carter* v. *Crehore, supra,* and *Evans* v. *Garvie, supra,* and it is presumed that the testator was cognizant of the rules of law therein announced at the time he executed the will. (*Long* v. *Rike,* 50 F. [2d] 124, 133, 69 C. J. 774.) Article 4, paragraph (f), of the will requires the trustees to treat all stock dividends received by them, being dividends in the form of capital stock issued by corporations, shares of the capital stock of which form part of said

trust estate, as principal and not as income of said trust estate.

It is thus to be noted that Mr. Weber by testamentary mandate did expressly depart from the local rule of allocation by requiring that all stock dividends should become a part of the corpus of the trust estate irrespective of their source or when received. Had he not so provided such stock dividends as representing corporate surplus earnings accrued subsequent to his death would have been distributable as income. But he refrained from any departure from the local rule in respect to extraordinary cash dividends so that all such dividends as were paid out of surplus earnings which accumulated prior to the death of the testator became corpus and all dividends representing surplus which accumulated subsequent to the inception of the trust were income payable to the life tenants. It was entirely rational and natural for Mr. Weber to provide that all stock dividends be added to the corpus of his trust estate for the benefit of his descendants who would ultimately come into the trust property. It was equally rational and natural for him to permit the rules of law locally in force and of which he had knowledge to control the allocation and disposition of extraordinary cash dividends and such was the purpose and effect of his will.

The order appealed from is reversed and the cause is remanded to the court below with instructions to approve the twelfth annual account of the trustees as presented.

*G. R. Corbett* (also on the brief)., guardian ad litem for Helen E. Cropp and George E. F. Cropp, minors.

*L. Jenks* (*Anderson, Marx, Wrenn & Jenks* on the briefs) for Hawaiian Trust Company, Limited, Trustee.