COOKE TRUST COMPANY, LIMITED, EXECUTOR OF THE WILL AND OF THE ESTATE OF JANE K. BREDE, DECEASED, *v.* WAIALUA AGRICULTURAL COMPANY, LIMITED, ET AL.

No. 2389.

Submitted August 14, 1940.          Decided November 27, 1940.

Peters and Kemp, JJ., and Circuit Judge Brooks in Place of Coke, C. J., Absent.

OPINION OF THE COURT BY KEMP, J.

Joe A. Vivichaves, a resident of Honolulu, died testate on January 19, 1920. His will, which was duly admitted to probate in the circuit court of the first circuit of the Territory, contained the following bequest: "I give and

bequeathe unto the said *MISS JANE DOUGLAS*, for the term of her natural life, all the dividends and profits of all my shares of and in the Capitol stock of *WAIALUA AGRICULTURAL COMPANY, LIMITED*, a corporation, Upon the death of the said *MISS. JANE DOUGLAS*, or in case she die before me, I give and bequeath all my shares in the Capitol stock of the said *WAIALUA AGRICULTURAL COMPANY, LIMITED*, a corporation unto the following nephews and niece of mine * * * and to their administrators, executors and assigns forever." The "Miss Jane Douglas" mentioned in the will of the testator was also known as Jane K. Brede and as Jane Douglas Vivichaves Brede. For convenience she will be hereinafter referred to as "Mrs. Brede," and the Waialua Agricultural Company, Limited, will be referred to as "Waialua."

The testator at the time of his death owned and possessed 200 shares of the capital stock of the Waialua Agricultural Company, Limited, and upon the settlement and distribution of his estate his legal representative caused to be issued to Mrs. Brede by Waialua, in conformity with the second paragraph of the will of the testator, certificate number 14,523 for 200 shares of the capital stock of the company. The certificate is dated December 18, 1920, and is in the name of "Jane Douglas Vivichaves Brede for life remainder according to the Will of Joe A. Vivichaves, Deceased."

On December 20, 1935, Waialua duly paid a 50% stock dividend and in accordance therewith issued to Mrs. Brede certificate number H 23151 for 100 shares of its capital stock in the name of "Jane Douglas Vivichaves Brede for life remainder according to the Will of Joe A. Vivichaves, Deceased."

Mrs. Brede died on November 6, 1936, and Cooke Trust Company, Limited, hereinafter referred to as the

"executor," was duly appointed the executor of her will. Shortly after its appointment, the executor made a demand upon Waialua for the transfer to it as such executor of said 100 shares of its capital stock issued in payment of said stock dividend. The demand was refused. Accordingly, the Cooke Trust Company, Limited, as executor under the will and of the estate of Jane K. Brede, deceased, brought its bill in equity against Waialua and the remaindermen mentioned in the second paragraph of the will of Joe A. Vivichaves, deceased, to compel the company to comply with said demand.

The case was tried below on facts stipulated by the parties. The stipulation includes a statement of the financial structure of Waialua as of January 19, 1920, the date of the death of Joe Vivichaves, and such additional data in respect to its assets, net earnings and total profits for the period ending December 20, 1935, the date of the payment of the stock dividend, together with the amount by which the capital stock was increased, and the selling price of the stock of the company immediately after the payment of the stock dividend, from which the court might determine (a) the extent to which said stock dividend included income accrued to Waialua since the date of the death of the testator, and (b) the proportionate interests of the life tenant and remaindermen, respectively, upon apportionment. The conclusion of the trial judge, however, that the stock dividend was distributable to the remaindermen to the exclusion of the life tenant eliminated the consideration by him of the question of apportionment.

The circuit judge held that the remaindermen named in the second paragraph of the will of Joe Vivichaves, deceased, were entitled to all of said 100 shares issued in payment of said stock dividend, basing his decision primarily on what he termed "the realities," as discussed in *Gibbons* v. *Mahon*, 136 U. S. 549, and *Eisner* v. *Macomber*,

252 U. S. 189. From the decree in favor of the remainder-men the executor appealed.

The executor advances the following propositions: 1. That the intention of the testator is controlling and that his intention as expressed in the words "all the dividends and profits of all my shares" can only be given effect by awarding the whole of the stock dividend to the life tenant. 2. In the event that the interpretation of the will contended for by it is not adopted, the life tenant was, under the Hawaiian rule relating to the allocation of stock dividends between life tenant and remainderman, entitled in her own right to 43.47 shares out of the 100 shares received as a stock dividend. Other propositions argued by the executor are advanced in support of one or the other of the two foregoing propositions.

The remaindermen agree that the intention of the testator is controlling but argue that the language of the will of Vivichaves does not enlarge the meaning of "dividends"; that the remaindermen are specific legatees and as such are entitled to stock dividends; that the term "dividends and profits," as used in the will, does not include stock dividends and that acceptance by the life tenant of the stock dividend in the form indicated above was a practical construction by her of the will as to the testator's intention. The question of waiver has not been raised.

The circuit judge having declined to follow the law as established by *Carter* v. *Orehore*, 12 Haw. 309, and followed in *Evans* v. *Garvie*, 23 Haw. 651, and *Estate of Weber*, 34 Haw. 137, did not decide the issues necessary to be decided in order to apply the law of those cases.

Since the entry of the decree here appealed, this court has twice rejected the theory of the cases followed by the circuit judge and followed its own former decisions. (*Estate of Allen, ante,* p. 501; *Robinson* v. *McWayne,*

*ante*, p. 689.) Cogent reasons are given in the recent decisions of this court for refusing to sanction the decision of the circuit judge holding that we should abandon the rule of apportionment of stock dividends between life tenants and remaindermen, generally referred to as the Pennsylvania rule, first adopted in this jurisdiction more than forty years ago in the case of *Carter* v. *Crehore, supra,* and adopt the rule which treats all stock dividends as corpus, generally referred to as the Massachusetts rule, exemplified in the two cases cited by the circuit judge in this case. It clearly follows that the decree here appealed must be reversed unless it appears that for other reasons the correct result was reached.

The executor's first proposition is that the testator, Vivichaves, by the use of the phrase "all the dividends and profits of all my shares," has expressed an intention to give to Mrs. Brede every dividend declared in her lifetime upon the stock held by him without regard to its nature and regardless of when or how the surplus from which it is paid was created. Emphasis is placed upon the use and repetition of the word "all" in the foregoing phrase. Particular reliance is placed upon *Estate of Merrill,* 193 Wis. 84, 86, 89, 213 N. W. 641. In that case Mrs. Merrill gave her son, Frederick, 100 shares of corporate stock. Said stock was transferred to the son, who, in consideration of said gift, agreed to promptly pay over to his mother "all income and dividends which shall accrue or be paid upon said stock * * * as long as she shall live." During the life of the son the corporation issued to him a stock dividend of 50 shares. Without having accounted to his mother for the stock dividend, the son died and Mrs. Merrill sued the administrator of his estate to recover, among other things, the 50 shares representing the stock dividend. Mrs. Merrill prevailed and the administrator appealed. The supreme court affirmed the judgment but

declined to pass upon the question of whether Mrs. Merrill would have the right to said stock if her son had tendered to her the face value thereof in cash, for the reason that the son waived the right to have the stock issued to him as absolute owner by failing to tender to his mother the cash equivalent thereof, and concluded with the statement: "That she was entitled to the dividend stock or its face value in cash is settled by the cases of *Soehnlein v. Soehnlein*, 146 Wis. 330, 131 N. W. 739, and *Miller v. Payne*, 150 Wis. 354, 136 N. W. 811." The opinion does not disclose whether the surplus capitalized by the issuance of the stock dividend was earned before or after the gift of the 100 shares. Neither does it disclose whether or not the surplus was created by a write-up of the value of property owned by the corporation. From the foregoing it is apparent that the court did not hold that the language there used precluded the application of the apportionment rule but based its conclusion that Mrs. Merrill was entitled to all of said dividend stock on the finding that her son had waived his right to an apportionment.

We see substantial difference between the gift of "all dividends and profits," the phrase used by the testator, Vivichaves, and the gift of "all income and dividends which shall accrue or be paid," considered in the *Merrill* case. It would not be unreasonable to conclude that Frederick Merrill, by the use of the alternative "or," intended that any dividend which was paid, either in cash or in stock during the life of his mother, was to be paid over to her regardless of when or how the surplus out of which it was paid was created. But, as shown by the concluding sentence of its opinion above quoted, the Wisconsin court did not hold that the stock dividend there under consideration would not have been subject to apportionment between Mrs. Merrill and her son if he had not waived that right.

The case of *Mackellar* v. *Stebbins*, 244 Mich. 170, 221 N. W. 275, holds squarely that "dividends" and "all dividends" are equally inclusive; that neither indicates an exception, and had the testator said "the dividends" or "dividends," instead of "all dividends," the meaning would be practically the same. With this conclusion we fully agree. We therefore hold that the testator, Vivichaves, by the use of the phrase "all dividends and profits," instead of "the dividends and profits," has not expressed an intention to take the case out of the well-established rules applicable to apportionment of stock dividends between life tenant and remainderman.

The remaindermen argue that the acceptance by Mrs. Brede of the certificate of stock issued by Waialua in payment of said stock dividend, in the form heretofore indicated, constituted a practical construction of the will as to the testator's intention and should be followed by the court. Practical construction, however, is resorted to only in case of ambiguity. (69 C. J. § 1167, p. 125; *Guilford* v. *Gardner*, 180 Iowa 1210, 162 N. W. 261; *Smith* v. *Creech*, 186 N. C. 187, 119 S. E. 3.) We find no ambiguity in the devise in question.

The remaindermen next argue that they are owners of a specific legacy, *i.e.*, the 200 shares of Waialua; that specific legatees are entitled to all increase on specific legacy, and that, therefore, they should receive the whole of said stock dividend. They rely upon *Smith* v. *Smith,* 192 N. C. 687, 135 S. E. 855, decided in 1926.

The circuit judge seems to have placed some reliance upon this claim of the remaindermen. He referred to said 200 shares as a specific legacy and cited *Smith* v. *Smith, supra*, p. 688, but made no application of it to the facts in this case. There the testator, who owned 60 shares of the capital stock of a cotton mill corporation, bequeathed 20 shares thereof to one Nesbitt, 10 shares to

one Neikirk, 10 shares to one Porter, 10 shares to one Smith and 10 shares to one Parker. He also devised to his wife "all the balance and residue of my estate, wherever situated, and whatever it may consist of, whether real, personal or mixed, to hold during her natural life, said income to be hers absolutely." In another paragraph of his will the testator provided that after the death of his wife "All the balance and residue of my estate * * * shall be equally divided among" certain named persons. During the life of the testator's wife the cotton mill declared and paid to the executor certain stock dividends which the executor still had when the wife died. The contest over the ownership of the shares representing the stock dividends was between the remaindermen, to whom the residue of the estate was given after the death of the wife, and the five individuals to whom the specific stock was bequeathed. Basing its opinion on the fact that the bequest of the stock owned by the testator at the time of his death was specific and the devise of the remainder of his residuary estate was general, the court held that the stock dividends belonged to the specific legatees. With that conclusion we fully agree, but fail to see how it can have any application to a case where the testator has made a specific devise of "all the dividends and profits of all my shares" of stock in a named corporation to one person for life and a specific devise of the same stock to others "upon the death" of the first taker. The facts certainly do not bring this case within the general rules laid down by the authorities and applied in *Smith* v. *Smith, supra*. Although it is not mentioned in said opinion, North Carolina had adopted the Massachusetts rule in 1915, in *Humphrey* v. *Lang*, 169 N. C. 601, 86 S. E. 526. If, therefore, it may be said that the income or earnings of the stock specifically devised was given to testator's wife for life, which is doubtful, that fact would not have changed

the result in North Carolina, where all cash dividends are held to be income and all stock dividends capital. In a discussion of specific legacies, 3 Woerner, American Law of Administration (3d ed.) § 458, p. 1572, has this to say: "Specific legacies do not come within the general rule, because, it is said, they are considered as separated from the general estate, and appropriated at the time of the testator's death. Hence, whatever produce accrues upon them from that time on belongs to the legatee, and, if there be successive legatees, each is entitled to the income during the time he is entitled to the corpus. Thus, where there is a specific legacy of shares of stock, the dividends go to the legatee from the death of the testator; and where livestock, cows, mares, or ewes, etc., are bequeathed, the legatee is entitled to any increase between the death of the testator and the assent of the executor."

Finding nothing in the will to indicate an intention on the part of the testator to take the case out of the rules established by the former decisions of this court, the decree appealed must be reversed and those rules applied.

We have refrained from considering the legal effect of the stipulated facts upon which the question of apportionment as between life tenant and remaindermen depends. They, in our opinion, are not complete and when made so, are more properly directed to the court exercising original jurisdiction in the case for its consideration and determination, subject to appeal.

For the foregoing reasons the decree appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.

*Anderson, Marx, Wrenn & Jenks* for petitioner.

*R. J. O'Brien* and *R. Yamaguchi* for certain respondents.

*Robertson, Castle & Anthony,* attorneys for respondent Waialua Agricultural Company, Limited, filed no brief.