# IN THE MATTER OF THE TRUST ESTATE OF SAMUEL H. DOWSETT, DECEASED.

## No. 2738.

ARGUED MAY 11, 1949.                    DECIDED MAY 26, 1949.

LE BARON AND CRISTY, JJ., AND CIRCUIT JUDGE
TOWSE IN PLACE OF KEMP, C. J., DISQUALIFIED.

408

OPINION OF THE COURT BY LE BARON, J.

This is a bill in equity brought by the successor trustee of the trust estate of Samuel H. Dowsett, deceased, for instructions as to the disposition of certain assets as between the life beneficiary and the remainderman who are respectively the widow and daughter of the settlor, Samuel H. Dowsett, deceased. The assets under controversy in the hands of the trustee at the time the bill was filed consist of cash in the sum of $3,497.74 and 383 shares of capital stock in The Dowsett Company, Limited, a Hawaiian corporation, which were respectively received and acquired after the inception of the trust from dividends in cash from the same company, the dividends representing distributions of corporate capital assets realized on sale and condemnation in eminent domain of parts of corporate real estate. The trust instrument being silent as to that type of dividend, the life beneficiary claims that these assets and comparable ones to be received in the future should be paid and transferred to her as income while the remainderman takes the position that they should be allocated to corpus and there retained by the trustee. This constitutes the paramount issue to be determined on appeal

and presents a problem of construction of the trust instrument, there being involved no question of any distributions of trust assets to the life beneficiary made prior to the filing date of the bill, nor is the trustee's duty under scrutiny to convert any unproductive or underproductive investments of the trust into productive ones.

The circuit judge's decision neither sustained the claim of the life beneficiary nor affirmed the position taken by the remainderman. It rather decided that the case is one for apportionment and applied a subordinate rule of intact values. Accordingly, his decree (1) fixed values of the entire shares of capital stock, in the number of 1,716, as of the time of the trust's inception and as of the time of hearing; (2) declared the cash now in the hands of the trustee and derived from the dividends to be income; (3) stated that all real property of the trust estate is corpus; (4) determined that a personal indebtedness of the settlor, payable after his death by the trustee at the inception of the trust, is chargeable against corpus; (5) ruled that the 383 shares of capital stock acquired after the inception of the trust, and included in the 1,716 shares now held in the trust, was paid for out of corpus and remains a part of the corpus; (6) apportioned the costs and expenses of the proceedings equally between the life beneficiary and the remainderman. From the decision and decree of the circuit judge, the life beneficiary appeals.

The aim of a court of equity, in construing a trust instrument is, and should be, to ascertain and carry out the settlor's intent. (The settlor in this case was Samuel H. Dowsett, deceased, although the nominal "settlor" was his lawyer who drew the trust instrument.) While it is true as contended by the remainderman that this intent must be gathered if possible from the trust instrument itself, nevertheless it is equally true that extrinsic evidence with respect to the circumstances surrounding

the creation of the trust and the settlor's conception of any ambiguous words, employed by him in the trust instrument, may be received and considered for the purpose of aiding the court in construing the instrument to determine his intent.

The reported cases with respect to what constitutes income and what constitutes corpus of a trust are numerous, diversified and predicated upon the peculiar facts presented by each of them. All of them, however, tend to demonstrate that the meaning of the word "income," standing alone out of context, is rather ambiguous, indefinite and, to say the least, dependent upon the peculiar facts existing in each particular case wherein its interpretation is called for. Undoubtedly for this reason, counsel for both the life beneficiary and remainderman have alluded to them.

It is a general rule, recognized by the great weight of authority, that not only the settlor's declarations or conduct whether prior or subsequent to the creation of the trust and his interpretation thereof, but any other competent evidence tending to establish the settlor's understanding of any ambiguous word is clearly admissible to be weighed to determine what he may have understood and meant by that word as used by him in the trust instrument. (*O'Brien* v. *Walker,* 35 Haw. 104; *De Brabant* v. *Commercial Trust Co.,* 113 N. J. Eq. 215, 166 Atl. 533; *Graves* v. *Graves,* 115 N. J. Eq. 547, 171 Atl. 681; *Porter* v. *Van Denburgh,* 15 Cal. [2d] 173, 99 P. [2d] 265; *Norris* v. *Jones,* 31 Fed. Supp. 463; *Wilmington Trust Co.* v. *Wilmington Trust Co.,* 21 Del. Ch. 102, 15 A. [2d] 153; Wigmore on Evidence [2d ed.] vol. 5, §§ 2471, 2472.)

Pursuant to this general rule, the life beneficiary introduced a great maze of extrinsic evidence of the circumstances surrounding the creation of the trust and of the alleged conception of the settlor of the word "income,"

employed by him in his trust instrument, to embrace a meaning beyond that ordinarily understood by the word. It is the duty of this court to determine whether or not that evidence is competent to have the effect which is claimed for it and, if it is, to consider it in construing the trust instrument.

The first piece of extrinsic evidence relied upon by the life beneficiary is a copy of a letter written by the settlor to his co-trustee of the then existing and revocable *inter vivos* trust, consisting entirely of shares of capital stock in The Dowsett Company, Limited, under which the settlor by appropriate instrument could cancel, amend or modify any of its provisions, but in absence thereof was entitled to the net income quarter yearly to the same extent that the life beneficiary is now entitled to it after the trust became irrevocable on the settlor's death. The copy is quoted in full as follows:

"Honolulu, T. H., October 17, 1923.
"Bishop Trust Company, Ltd.
"Honolulu, T. H.
"Gentlemen:

"I have this day executed a deed of trust covering my 1333 shares of The Dowsett Company, Ltd., under which your company and I are to act as joint trustees. It is, of course, understood that when I am in the Territory of Hawaii the above shares are to be voted by me, but while I am absent from the Territory of Hawaii, one of the officers of your Company is to represent and vote the above shares.

"I have instructed the proper officers of The Dowsett Company, Ltd., to forward all dividend hereafter to you, which it is understood you are to credit to the trust account on your books, charging $2\frac{1}{2}\%$ upon all income (being both usual and extra dividends) collected.

"I expect to leave for the mainland on October 20th

and wish that while I am away you would deposit the sum of $75.00 on the first of each month, commencing November 1st, in The Bank of Bishop & Co., Ltd. to the credit of 'S. H. Dowsett and/or Madeleine K. Dowsett.'

"Please send my quarterly statements commencing January 1, 1924, to the following address:

c/o Brudin Hardware Company,
Hemet, Riverside County,
California.

Yours very truly,

(Sgd.) S. H. DOWSETT."

On its face this copy is equivocal with respect to the meaning of the word "income" and does not purport to define that word. Its application of the then statutory rate upon capital receipts (R. L. H. 1915, § 2452) to the income described in the copy, when read in conjunction with the trust instrument which permits the taking of "fees and commissions allowed by law," implies that the word "income" in the copy was employed to mean a lumping of all intake into the trust as capital, consistent with the implication that "the sum of $75.00" to be deposited "on the first of each month" was understood to be payment of the income from the corpus itself under the trust instrument, but inconsistent with the implication that such income constituted "both usual and extra dividends" as indicated by the position of those words to the word "income" in the copy. Neither of the consistent implications nor the divergent one, however, is a necessary one or so strong in its probabilities that the contrary thereof cannot be reasonably presumed. Taken as a whole, the copy of the letter indicates but a temporary administrative arrangement in a then *inter vivos* trust to be reflected in current "quarterly statements" and, being subject to change, did not undertake to settle the allocation of accounts or to otherwise establish the substance of what

would be irrevocably paid the life beneficiary after the settlor's death. No part of it, therefore, is probative of what the settlor understood by the word "income" as used by him in the trust instrument and hence the copy is valueless as an aid of construction.

The remaining piece of extrinsic evidence, relied upon by the life beneficiary to establish that the settlor's concept of income embraced a meaning beyond its ordinary sense to include all dividends disbursed in cash to the trustee by the corporation from proceeds of sale and condemnation by eminent domain of corporate real estate, involves the character of The Dowsett Company, Limited, claimed by the life beneficiary to be a wasting-assets corporation or a sole dealer in real estate as a commodity. The theory of the life beneficiary is that The Dowsett Company, Limited, was formed to and did engage in the sole business of liquidation of its original property and that the settlor as a shareholder and officer in the corporation knew of this procedure and anticipated that his investment would become worthless by the liquidation of the corporate property and exhaustion of its assets. It is argued therefrom that the court ascribe to the settlor the intention that the life beneficiary as the recipient of the trust income shall have the benefit of all the dividends paid out by the company during the existence of her life interest, even though each dividend constitutes a partial distribution of capital assets of the corporation. In support thereof two cases are cited, i. e., Re Knox, 328 Pa. 177, 113 A. L. R. 1185, 195 Atl. 28, and Re Gartenlaub, 185 Cal. 375, 24 A. L. R. 1, 197 Pac. 90.

The Knox case under a rule of property peculiar to Pennsylvania involves a mining corporation which necessarily exploited and consumed its assets in operating its business and regularly declared dividends disbursing such capital assets gained by mining operations. In the Gar-

*tenlaub* case, the court had before it the broad language in a trust instrument of "the entire net income, revenue and profit of every kind" to construe in the light of the circumstances, involving a corporation, maintained and conducted for the sole purpose of selling a tract of unproductive land in parcels, at a profit and dividing the proceeds as dividends among its stockholders.

Neither the *Knox* nor the *Gartenlaub* case is controlling here upon the facts of this case. The Dowsett Company, Limited, was incorporated under the laws of the Republic of Hawaii on January 12, 1900, for a period of fifty years. It is now approaching the close of its corporate life. The purposes for which it was formed and in which it has engaged are to raise, purchase, sell and exchange livestock, and to purchase, sell, lease and rent and exchange real estate. At the time of incorporation the company owned some 4,000 head of cattle which it raised until such operation became unprofitable, when it gradually sold them and the increase thereof. It also then owned large areas of rural and urban real estate which it leased and rented over a course of many years. At irregular times, it sold parts of its real estate and had other parts wrested from it by condemnation proceedings in eminent domain. The frequently large sums of cash realized thereby were not as a rule reinvested by the company, but on several occasions, by successive legitimate reductions of recorded capital, large sums were reflected in capital surplus and distributed by "dividends" in cash to its stockholders. At one time, however, the company reinvested some of these proceeds and purchased other real estate in the State of California. At another, it distributed parts of its real estate to the stockholders by way of "dividends" in kind. The company still owns part of its original real estate and receives some income as rents and lease rentals from it. More than forty-eight years have elapsed and today

the value of the residue of its real estate is apparently greater than that of its entire holdings on incorporation.

There is nothing in the corporate history of The Dowsett Company, Limited, since its incorporation on January 12, 1900, to indicate that its property was ever of a wasting, perishable or consumable nature, dealt with solely as a commodity, or was unproductive and held merely to be sold or liquidated. But there was at the time the trust instrument was executed on October 17, 1923, every indication that the settlor's investment in the corporation had been steadily increasing in value through natural increment brought about by lapse of time and changing conditions upon the corporate real estate after almost a quarter of a century of operations. The settlor in his capacity as an original stockholder and as an officer, therefore, had good reason to believe that the return on his investment had been likewise increasing and would proportionately increase thereafter. Consequently, it is reasonable to presume that the settlor anticipated such increase rather than that the investment would become worthless during the life of his widow so as to leave nothing in remainder to his daughter. There is thus no factual basis upon which to predicate the life beneficiary's theory and argument, nor one upon which a court may reasonably ascribe an intent on the part of the settlor to afford the life beneficiary "dividends" distributing corporate capital assets as a benefit to her at the expense of the remainderman.

The paramount intent of the settlor, drawn from his trust instrument as a whole, is to provide for his widow during her life out of the income from his trust estate and for his daughter thereafter out of his estate free of trust and in fee simple. To effectuate that intent, the meaning of the word "income" must be given its ordinary meaning in contradistinction to the ordinary

meaning of the word "capital," otherwise such an intent would be defeated by distributions to the life beneficiary of capital assets which would impair, if not destroy, the corpus of the trust to the ultimate injury of the remainderman. That such is the case is inferable from the circumstances that an able lawyer, versed in the meaning of words generally used in trusts, drew the settlor's trust instrument, the inference being that the word "income" was employed advisedly. It is further inferable from the context of that word in the trust instrument itself as "net income" to be paid from the trust estate "quarter yearly," the inference being that the settlor contemplated a corresponding regularity of receipts to the trust estate from his investments which is one of the concomitants of income in the ordinary sense of the word. Nor can the contrary be reasonably presumed that the settlor intended to include irregular disbursements of corporate capital assets to the trust estate from his investments within regular payments of income therefrom without manifesting such intent in clear and precise language. "Net income" used in this connection and context is not ambiguous but is to be ascertained by subtracting expenditures chargeable to income from receipts properly credited thereto. (See *In re Clarke's Will*, 204 Minn. 574, 284 N. W. 876.) The settlor's intent with respect thereto is therefore construed from the four corners of the trust instrument in conformity with the ordinary meaning of net income.

The trust instrument, so construed, entitles the life beneficiary during her life to the net earnings derived from the shares of capital stock held in trust but not to their capital gains or natural increment brought about by lapse of time and changing conditions upon corporate real estate, nor to a distribution of capital assets on sale or liquidation thereof. (See *In re Clarke's Will, supra.*) These capital gains, increment and assets were aliquot parts of

corporate ownership which, when distributed to the trust, became aliquot parts of its corpus ownership on which, however, the life beneficiary is entitled to income therefrom as something produced by the corpus but which leaves such corpus intact. (See *In re Dare's Estate,* 196 Cal. 29, 235 Pac. 725; *Hayes* v. *St. Louis Union Trust Co.,* 317 Mo. 1028, 298 S. W. 91; *Pritchitt* v. *Nashville Trust Co.,* 96 Tenn. 472, 36 S. W. 1064; 130 A. L. R. 493, Anno.; 50 A. L. R. 375, Anno.)

At the time the instant bill in equity was filed none of the trust assets, for which instructions are requested as to disposition between the life beneficiary and the remainderman, was attributable to trust income or corporate earnings paid to the trust estate. On the contrary, they consisted of cash received and shares of capital stock purchased from dividends in cash distributed since the inception of the trust as realizations from the sale and condemnation in eminent domain of corporate real estate. Having been capital assets in the hands of the corporation, they and that which was purchased with them became capital assets in the hands of the trustee. Being capital assets of the trust estate, they are therefore allocable to corpus. (See *Heard* v. *Eldredge,* 109 Mass. 258, 12 Am. Rep. 687; 24 A. L. R. 92, Anno.) There is thus nothing to apportion. Hence the rule of apportionment, laid down in the cases of *Carter* v. *Crehore,* 12 Haw. 309, *Estate Thomas Cummins,* 16 Haw. 185, *Evans* v. *Garvie,* 23 Haw. 651, *Estate of Weber,* 34 Haw. 137, and *Estate of Allen,* 35 Haw. 501, has no application to this case. But this line of cases affirms the principle established here. This is exemplified by the leading case of *Carter* v. *Crehore, supra,* in its following apt language. That language, adopted as a part of this opinion, reads: "Of course, if a so-called dividend is made of the whole or a part of the *capital* of a corporation * * * it is considered a part of the

corpus of the trust to be kept for the remainderman, only the income thereof to go meanwhile to the life tenant, for, although called a dividend, it is in fact not a dividend proper (which can be paid only from earnings) but a distribution of capital or a change in the evidence of the ownership of capital, and courts everywhere agree that they should look through the form to the substance in cases of this kind. A dividend of this kind not only is not income to the shareholder, it is not even paid out of what is income to the corporation, and the creator of the trust cannot be supposed to have intended that it should be considered income or dividend merely because the corporation or its directors have called it by that name."

There being no apportionable assets in the hands of the trustee at the time of filing, it was error for the circuit judge to have decided that this is a case for apportionment and in doing so to fix intact values under application of a subordinate rule thereto. Necessarily, therefore, the result of such application in decreeing that the trust assets were allocable to income is erroneous. Nor are the values of the shares of capital stock held in trust material in determining what is corpus, this court being concerned with the shares themselves in constituting part of the corpus, rather than with their values at any given time. (See *Hayes* v. *St. Louis Union Trust Co., supra.*) But as to dividends which may be declared after the filing of the bill, those derived exclusively from corporate income earned during the life tenancy and those derived exclusively from corporate capital are not apportionable, but go to the life beneficiary and to the corpus, respectively, as the case may be and the corporate source indicates. Nevertheless, as to extraordinary dividends in cash or stock of accumulated corporate income declared thereafter, the trustee is under the duty to apportion them, giving to the life beneficiary that part which was earned

during the life tenancy and holding for the remainderman that part, if any, which was earned before the life tenancy began under the principles enunciated by this court in the *Carter* v. *Crehore* line of cases cited. Nothing more need be said on the subject of apportionment of dividends other than that stock dividends declared to the trust estate are not to be apportioned but allocated to corpus pursuant to the expressed provision of the trust instrument that "all stock dividends * * * shall be considered and treated as capital."

There remains to be considered the question of the payments made and to be made by the successor trustee, subsequent to the inception of the irrevocable trust, on the personal indebtedness of the settlor incurred prior thereto with respect to charging those payments to the trust account of income or corpus. Since both capital and any existing accumulated income therefrom on being placed in trust would constitute the corpus at the inception of that trust, it follows that in this case the personal indebtedness of the settlor, who pledged his then existing *inter vivos* trust estate therefor, necessarily became a continuing charge against the corpus of the irrevocable trust at its inception on the settlor's death. The circuit judge, therefore, correctly decreed that payments thereof must be charged against the trust's account of corpus.

For the reasons stated this court overrules the first two parts of the decree outlined and affirms the remaining parts thereof.

The decree is set aside and a new decree on presentation will be entered by this court consistent with its opinion herein.

*P. Cass* (also on the briefs) for Madeleine K. Tyson, life beneficiary.

*H. R. Hewitt* and *R. E. Brooks* (also on the brief) for remainderman Ethel K. von Geldern.